ANDREW J. STEVENS *vs.* BENJAMIN KELLEY, JR. and another.

Waldo.    Opinion December 7, 1886.

*Waters. Mill-pond. Ice.*

The owner of a mill-dam on an unnavigable stream, who does not own the bed of the stream above the dam, has a qualified interest in the water flowed but none in the ice formed upon it.

The riparian owner is the owner of the ice in such case, though the ice privilege is made by the flowage.

Where the owner of such a mill-dam maliciously and unnecessarily draws the water from the pond and thus destroys the ice field, he is liable in damages to the riparian owner who owned the land under the pond.

ON REPORT, with the stipulations that, if the action could be maintained upon the allegations contained in the declaration, the case was to stand for trial, otherwise a nonsuit was to be entered.

The declaration was as follows :

" In a plea of the case, for that whereas there now is and from time immemorial hath been a large unnavigable stream of fresh water, called Goose River, flowing in its natural channel from Goose Pond in the town of Swanville, through said Belfast, and through the land of said plaintiff, into Belfast Bay ; and whereas there now is, and for more than thirty years last past, has been

a stone dam across said stream about fifty rods, below and southerly of the land of said plaintiff, built, and prior to January first, A. D. 1880, maintained and used exclusively for the purpose of operating a mill connected with said dam, which said dam, mill and mill privilege, on said first day of January, A. D. 1880, were, ever since. have been, and now are owned by, and in the possession of said defendants. And plaintiff avers that ever since said first day of January, A. D. 1880, said mill has been idle, abandoned and unused and whereas on the first day of January, A. D. 1880, said plaintiff was, ever since has been, and now is seized and possessed of a certain parcel of land situated upon both sides of said stream, including said stream and extending northerly from a line drawn east and west across said stream about fifty rods northerly of said dam, and upon said land of said plaintiff, there is and for more than thirty years last past has been a pond of fresh water of the area of twenty-five acres, flooded and kept up by means of said dam of defendants, making a valuable privilege for cutting and harvesting ice, on which pond plaintiff might, and but for the acts of defendants hereinafter alleged, would, every year since said first day of January, A. D. 1880, have cut and harvested ten thousand tons of good, clear, merchantable ice, at a yearly net profit to him of three hundred dollars, and plaintiff avers that the use of the water above said dam for the purpose of operating said mill since said first day of January, A. D. 1880, would not materially have injured the plaintiff in his use and enjoyment of said ice privilege."

"Yet the said defendants well knowing the premises, but maliciously contriving and intending to hinder and deprive the plaintiff, of the profit and advantage of said ice privilege, and unjustly to aggrieve the plaintiff, from the first day of May to the first of December in every year since said first day of January, A. D. 1880, have kept and maintained said dam, with flash boards of the height of two feet upon said dam and across said stream, thereby during said time keeping said stream and pond above said dam filled with water to the level of the top of said flash boards, and on the first day of January, A. D. 1880,

and on divers other days and times during each and every winter season between said day and the day of the purchase of this writ, while the ice was forming and being cut and harvested by said plaintiff upon said pond, said defendants did open the sluice way and gate of said dam, and thereby cause the water to flow out of and away from said pond, whereby the ice forming in said pond, and being cut and harvested by the plaintiff, as aforesaid, was settled and precipitated to the bottom of said pond, upon and into the mud, and said ice to the amount of ten thousand tons per year, and of the yearly net value of three hundred dollars, was thereby wholly destroyed and lost to the plaintiff, and by keeping said stream and pond filled with water, from the first day of May to the first day of December of each of said years since said first day of January, A. D. 1880, by means of said dam and flash boards as aforesaid, said defendants have hindered and wholly prevented the plaintiff from erecting and maintaining a dam across said stream, upon his own land, below said pond and ice privilege, for the purpose of holding the water in said pond, and protecting and preserving his ice thereon, to the damage of said plaintiff, as he says, the sum of fifteen hundred dollars, which shall then and there be made to appear with other due damages."

*Thompson and Dunton,* for the plaintiff, cited :

*Mansur* v. *Blake,* 62 Maine, 38 ; *Robinson* v. *White,* 42 Maine, 216 ; R. S., c. 92, § 1 ; *Jordan* v. *Woodward,* 40 Maine, 317 ; *Crockett* v. *Millett,* 65 Maine, 191 ; *Farrington* v. *Blish,* 14 Maine, 423 ; *Wilson* v. *Campbell,* 76 Maine, 94 ; *Dixon* v. *Eaton,* 68 Maine, 542 ; *Paine* v. *Woods,* 108 Mass. 160 ; *Baird* v. *Hunter,* 12 Pick. 555 ; *Phillips* v. *Sherman,* 64 Maine, 174 ; R. S., c. 92. § 35 ; R. S., c. 127, § 5.

*W. H. Fogler,* for defendants.

The declaration does not deny the defendants' right to maintain their dam, flow the plaintiff's land, but on the contrary, assumes and avers that the defendants have such right. "There now is, and for more than thirty years last past there has been a stone dam across said stream . . built . . .

maintained and used exclusively for the purpose of operating a mill," &c. There is no allegation that the building, maintenance and use of the dam was unlawful or without right.

The allegation that " ever since said first day of January, A. D. 1880, said mill has been idle, abandoned and unused," is not a sufficient averment that the right to maintain the dam has been lost by non user. *Farrar* v. *Cooper*, 34 Maine, 394, 399 *et seq.*

To establish an abandonment of a right, the enjoyment of the right must have totally ceased for the same length of time that would be necessary to acquire the right by adverse enjoyment. *Corning* v. *Gould*, 16 Wend. 535.

The declaration does not aver that the plaintiff has the right to maintain a dam above the defendants' dam at any point where his land is flowed by the defendants' dam. Applying the rule of priority he would have no such right. *Lincoln* v. *Chadbourne*, 56 Maine, 197.

The plaintiff shows no right by adverse posssession to use the pond for the cutting of ice. *Pillsbury* v. *Moore*, 44 Maine, 154; *Lockwood Co.* v. *Lawrence*, 77 Maine, 319 *et seq.*

The riparian owners upon an unnavigable stream are entitled by common law to the natural flow of the water. They have the right to a reasonable use of the water—not an ownership in the water, but a right to appropriate it reasonably to his private use. Gould on Waters, § 204; *Davis* v. *Getchell*, 50 Maine, 602.

The riparian owner and the person who flows, have each a qualified right in the ice which forms in an artificial pond, *i. e.* the mill owner has the right to have the ice remain if its removal will appreciably diminish the head of water at his dam; and the riparian owner has the right to cut and remove the ice if its removal will not appreciably diminish such head. Gould on Waters, § 191, and cases cited.

The rights of the owner of the dam are clearly expressed by the court in *Bradford* v. *Cressey*, 45 Maine, 9.

In *Paine* v. *Woods*, 108 Mass. 160, in which it was held that in estimating damages under the " Mill Act" the benefit which would result to the owner of the land flowed by the

facilities afforded by the flowage for the cutting of ice, the court admit that the mill owner may at any time open his dam and let down the pond.

DANFORTH, J. This action is reported upon the allegations in the writ, and for the purposes of this hearing, such allegations must be taken as true.

It appears that the parties are respectively riparian owners upon a fresh water unnavigable stream; the defendants owning a mill below, with a privilege and a dam which flows the water back upon the plaintiff's land, thereby creating a pond, which is useful and profitable for cutting ice in the winter season. The defendants' dam has been accustomed thus to flow for more than thirty years. By what title the defendants obtained this right to flow does not appear, and perhaps it is not material. They have it, and as it does appear that the plaintiff is not only a riparian owner, having a title to both the banks but to the bed of the stream also, it necessarily follows that the defendants' right in this respect, is one of flowage only.

It is alleged in the writ that the defendants have not, for several years, used their mill, but that they have flowed the water in the summer and early winter, but that when the "ice was forming, and being cut and harvested," they let the water out of the dam, by opening the gate and sluiceway, thus causing the ice to fall into the mud and become spoiled; and this is the act complained of. The allegation that, by flowing in the summer, the plaintiff is prevented from building a dam for his own use, cannot be taken as a substantive cause of action, as is plainly shown by the context. It may have been put in to show the motive of the defendants or as an aggravation of damages, but whether it subserves any useful purpose, is not material now, as it cannot be a foundation for or even an element in the cause of action.

The result of the case must depend upon the rights of the respective parties in the property involved.

The defendants' right of flowage, whether obtained by grant,

or under the mill act, having been used for more than thirty years with the mill, and so far as appears, for no other purpose, must be understood to be for the benefit of the mill. As such, their right to the use of the water thus flowed, must be limited by the wants and requirements of the mill, at least in kind. It might, perhaps, be more or less extensive in quantity, as changes in the mill from time to time, might require more or less water, but it could be used for no other purpose. As was said in *Crockett* v. *Millett*, 65 Maine, 195, "the mill is the principal. The dam is subservient to it." So too, this use of the water, is not unlimited. There are owners above and below, whose rights and whose interests are to be regarded. The owner of such an easement is not at liberty to consult his own interests or whims, only as to when, or in what quantity he shall let out the water thus accumulated. Even when rightfully accumulated, he must exercise ordinary care, in regard to the interests of riparian owners, both above and below, in letting it out. *Frye* v. *Moor*, 53 Maine, 583 ; *Phillips* v. *Sherman*, 64 Maine, 174.

The plaintiff as riparian owner above, has his fixed and well defined rights. Among others, not necessary to be noticed in this case, is that of taking ice from the stream where it flows over his land. Whether this right could have been profitably exercised, without the flowing, is not a question involved here. With the flowing it can be and the plaintiff has the right to avail himself of all the improvements made to his property even by the defendants. Nor can the defendants avail themselves of such a right though created by them. It is not a purpose recognized by law for which a person's land can be appropriated by another, but is a privilege attached to, and becomes the property of, the plaintiff.

This right to take the ice is not a new one, though, perhaps, a greater importance has become attached to it within the last few years than formerly. It results from and grows out of the title to the bed of the stream, and such right to the use of the water as results therefrom. This right is well settled by authority, as well as by principle. Gould on Waters, § 191 ; *Ham* v. *Salem*, 100 Mass. 350 ; *Paine* v. *Woods*, 108 Mass.

172. The plaintiff's title to the ice must be the same as in the water before it is congealed, and that is so well settled that it needs no further discussion. *Elliot* v. *Fitchburg R. R. Co.* 10 Cush. 191. The plaintiff therefore has the sole right to take the ice from the water resting upon his land, with the single qualification that it is not to be taken in such quantities as to appreciably diminish the head of water at the dam below. *Cummings* v. *Barrett,* 10 Cush. 186. If this diminution could ever take place from such cause as is doubted in the case last cited, (see pages 189, 190) there can be no such claim in the case at bar, for the mill was not in use and the water was not needed. Thus at the time the water was drawn off the title of the plaintiff to the ice was virtually absolute.

From this view of the rights of the several parties, it would seem to follow as a self evident proposition, that the defendants' interference with the plaintiff was unjustifiable, and that damages having resulted, they would be liable. But it is said that having raised the water, it was their privilege to let it down. It may be true that they were under no obligation to keep up the dam any longer than their interest, or whim even, might dictate. But the dam was not removed nor abandoned. It was kept up, and by an affirmative act on the part of the defendants, the water was drawn off when it was of no use to them, but a serious injury to the plaintiff. This can not be said to be consistent with their qualified right to the use of the water, and the reasonable care which they are legally bound to exercise in that use. It is rather a wanton use, a disregard of the rights of others which the law condemns, and which the writ alleges to be malicious and for the purpose of injuring the plaintiff. In *Phillips* v. *Sherman, supra,* on page 174, it is said, "a wanton, or vexatious, or unnecessary detention, would render the mill owner so detaining, liable in damages to those injured by such unlawful detention." If the owner of the dam has no right unreasonably to detain the water, for the same reason he would have no right wantonly to accelerate it to the injury of owners above or below. In *Frye* v. *Moor, supra,* it was held that when water is accumulated wrongfully, the party so doing in

letting it out must do so at his peril. In this case, so far as appears, the defendants had the right to flow the water for their mill only. It was not raised for 'that purpose, for the mill was not used. Nor does it appear for what purpose it was raised, except as alleged in the writ, to injure the plaintiff.

The case of *Chesley* v. *King*, 74 Maine, 164, in the principles involved, is substantially like this. There, the defendant, in digging a well upon his own land, destroyed the plaintiff's spring by drawing from it the water which percolated through the earth and thus supplied the spring. In that case it was held, after much consideration and a careful review of the authorities, that the defendant, though in the exercise of a right and would not be liable to an action so long as he acts in good faith and with an honest purpose, yet he would be liable if he dug the well for the sole purpose of inflicting damage upon the party who has rights in the spring. The case at bar would seem to be a stronger one for the plaintiff. In this the defendants have only a qualified interest in the water, a right to use it for a specified purpose only; and in that use bound to exercise due care in regard to the rights of others. Yet in the act complained of they were not in the use of the water for their own legal purposes, nor were they in the exercise of due care, by which an injury happened to the plaintiff.

This result is reached from a consideration of the facts alleged in the writ alone. What title to the water the defendants may show, or what excuse for their act, can only appear upon the trial.

*Action to stand for trial.*

PETERS, C. J., WALTON, EMERY, FOSTER and HASKELL, JJ., concurred.