## CLARK G. LAWTON vs. FRANK A. HERRICK.

First Judicial District, Hartford, May Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and BURPEE, Js.

It is within the discretion of the trial court to allow an amendment of the pleadings at any time before judgment, and its action will not be reviewed on appeal unless a clear abuse of such discretion is disclosed by the record.

A defendant cannot complain of the allowance of an amendment of the complaint to accord with evidence already received, if ample opportunity is afforded him by the trial court to present further evidence respecting the subject-matter of such amendment.

Reasons of appeal which are not urged by the appellant, either orally or in his briefs, may properly be treated as waived.

The owner of a mill-pond has a right to cut and harvest the ice formed thereon, if such taking does not unlawfully interfere with the rights of a lower riparian proprietor; and, as against an upper riparian owner, this right is exclusive.

If such ice is polluted and rendered unfit for use by sawdust and pomace thrown into the stream by an upper riparian owner, the latter is responsible for the resulting damage, including net profits which, but for such wrongful acts, the owner of the mill-pond would have realized from the sale of the ice.

A tort feasor is held to a somewhat stricter rule of liability in respect to damages than is applicable in an action for a mere breach of contract.

An upper riparian mill owner has the right to make a reasonable use of the stream in the operation of his mill; and the question whether his use was reasonable or not is one for the determination of the jury upon a consideration of all the circumstances in the case. A lower proprietor is bound by the same rule, but is not obliged to protect himself against illegal, unexpected acts of the former.

A riparian proprietor cannot acquire by prescription a right to deposit noxious substances in the stream to such an extent as to create a nuisance to a lower riparian owner whereby the value of the latter's property is largely diminished; for a prescription to be valid must be reasonable.

The fact that pomace had theretofore been thrown into the stream by others and had not polluted the plaintiff's ice, is immaterial and irrelevant.

The fact that others than the defendant also fouled the stream does not relieve him from liability.

The defendant made some cider for the plaintiff and threw the refuse

Lawton *v.* Herrick.

pomace into the brook. *Held* that this was no excuse for depositing other pomace in such quantities as to damage the plaintiff, nor did it render the latter a contributor to his own injury.

For repeated acts of trespass an injunction may very properly be granted.

Under our present practice, which responds more readily to modern equitable principles, a party injured by the disobedience of an injunction is not entitled, as of course, to recover the full amount of the penalty prescribed therein, but only the actual damages which he has sustained; and therefore the party enjoined is not prejudiced by the insertion of an arbitrary penalty in the restraining order.

It cannot be assumed that the mere admission of evidence which, strictly speaking, is rebuttal, during the introduction of the plaintiff's case in chief, has prejudiced the defendant's cause with the jury.

Alleged errors in the charge must be specifically and definitely pointed out; it is not enough to recite long passages and merely predicate error thereon.

Argued May 4th—decided July 12th, 1910.

ACTION against an upper riparian mill owner to recover damages for throwing sawdust, shavings, pomace and other refuse into the stream, thereby fouling the water, filling up the plaintiff's mill-pond and injuring his mill, also for an injunction, brought to the Superior Court in Windham County where the equitable issues were tried to the court (*Robinson, J.*) and the legal issues to the jury before the same judge; verdict and judgment for the plaintiff for $150 damages, and for an injunction against the continuance of the acts complained of, from which the defendant appealed. *No error.*

*Donald G. Perkins* and *Edmund W. Perkins*, for the appellant (defendant).

*Charles E. Searls* and *Harry E. Back*, for the appellee (plaintiff).

BURPEE, J. The plaintiff in this action is the owner

of a mill-pond and saw-mill, and about half a mile above, on the same brook, the defendant owns another pond and saw-mill in which he makes cider in the fall of the year. In his original complaint the plaintiff alleged that the defendant had been throwing into the brook scantlings, sawdust, pomace, and other refuse, which floated down into the plaintiff's pond and partially filled it up, clogged and damaged his mill, and made the water so foul and unwholesome that the plaintiff was not able to find and harvest ice fit for domestic use in sufficient quantity to satisfy the demands of the customers he had obtained and has hitherto supplied; and that he notified the defendant of these injuries and requested him to desist from such use of the brook, but without effect. The plaintiff claims that he has already been seriously damaged, and that he will be irreparably damaged and his mill-privilege and ice business ruined if the alleged nuisance be continued permanently; therefore he asked for damages for the injuries already caused, and an injunction to restrain the defendant from continuing such nuisance in the future.

In answer the defendant admitted that he had thrown the refuse into the brook substantially as alleged, and denied the remaining allegations of the complaint. Then he set up that he and his predecessors in title had acquired a prescriptive right to throw into the brook at his mill "the things and matter described in the complaint." This the plaintiff denied.

With issues thus made, the matters calling for legal relief were tried to the jury, and the claims for equitable relief, by agreement of counsel, were tried to the court at the same time. After both the plaintiff and the defendant had finished their evidence and were about to begin their arguments, the plaintiff moved to amend his complaint by inserting two paragraphs. He wished to set up that his water-wheel had twice been

broken by scantling thrown into the brook by the defendant, causing damage to the amount of $50; and that, in the winter of 1909, he had determined to add one hundred and twenty-five tons to his supply of ice, but could not because of the acts of the defendant, and thereby he had lost the sale of so much ice. The defendant objected to this amendment, but the court allowed it, and offered to grant an adjournment to allow the defendant to bring in any further evidence he might desire to introduce. The defendant filed a denial of the allegations in the amendment, but declined the offer of adjournment and to present any more evidence. This action of the court is the first reason of appeal specified.

The allowance of an amendment of the pleadings at any time before judgment is a matter resting in the discretion of the trial court, and its action will not be reviewed on appeal unless the record shows clearly an abuse of such discretion. *Sherman's Sons Co.* v. *In-dustrial & Mfg. Co.*, 82 Conn. 479, 482, 74 Atl. 773. Nothing is found in the record in this case to suggest such abuse. The facts upon which the plaintiff relied to prove the statements made in the amendment had already been put in evidence, and the trial court offered the defendant ample opportunity to present any further evidence he might obtain and desire to offer. If the defendant suffered any injury, it was not due to the allowance of the amendment, but to his refusal to avail himself of this opportunity to support his defense. *LaBarre* v. *Waterbury*, 69 Conn. 554, 37 Atl. 1068.

The defendant asked the court to instruct the jury, as he states the substance in his brief, that he was liable in this action only "for the damage specifically alleged to have been done by the articles named and thrown by him into the brook" between the dates mentioned in the complaint, and that the burden of proof was on

the plaintiff to show that the damage claimed was "caused by such articles . . . actually thrown or allowed by the defendant to be thrown into the brook." The court complied with these requests. The jury were instructed that they should hold the defendant liable for any damage caused by the refuse described in the complaint, which they should find was "truly charged to have been so thrown or caused to be thrown into the stream" by the defendant; that the plaintiff must "be limited to what he sets up in his complaint"; and that the burden of proof was on him to show that the damage which he claimed was actually caused by the articles named in the complaint, and that "the article or articles causing the damage were actually thrown or allowed by the defendant to be thrown into the brook." Such a charge was quite as favorable to the defendant as he asked for, or had any reason to expect.

The fifth and sixth reasons of appeal were not referred to by the defendant's counsel in argument or in his brief. We regard them as dropped.

Reasons 7, 14 and 16 of the appeal relate to the defendant's request to charge on the subject of damages for injury to the ice on the plaintiff's pond. This request was framed, apparently, before the allowance of the amendment of the complaint, which took away any basis for the claim that no damages to the ice were specifically alleged. As to the remainder of the request, it is not true that the plaintiff could not recover damages for the loss of the ice he intended to harvest and of which he was deprived by the wrongful acts of the defendant, or that such damages "are too remote and speculative." The court instructed the jury that the plaintiff claimed that the ice was lying on the pond, covering space and having thickness enough to yield about one hundred and twenty-five tons, in every respect suitable to be cut and used, except for its polluted

condition for which the defendant was responsible. They were cautioned to estimate the loss to the plaintiff from the evidence before them relating to the quantity of ice, the cost of harvesting, the waste in storage, and the market value of the remainder at the time when it could be sold.

The right to take and use or dispose of the ice on his pond, in its natural condition, was the property of the plaintiff. If the defendant destroyed or injured that property by putting sawdust or pomace into the pond, he was responsible for any resulting damage. To compute such damages, the court correctly stated the necessary and proper factors. It should be borne in mind that this is not an action for a breach of contract, but one of tort, asking for damages for wrongful injuries wilfully inflicted. In such a case, the wrongdoer is held to a stricter rule of liability. Properly limited, evidence of the profits of a business before and after an injury complained of in such an action is admissible, and may be considered in estimating compensation for the loss inflicted. Such profits are not too remote or speculative, nor was the plaintiff bound to look elsewhere to make good the loss to his property which the defendant had caused by wilful torts. *Comstock* v. *Connecticut Ry. & Ltg. Co.*, 77 Conn. 65, 58 Atl. 465.

The court was asked to charge that the plaintiff "had no title or ownership . . . in the ice frozen upon his pond" before he had removed it. But it was conceded that he was the owner of the pond and of the soil under and around it. It follows that he had the right to take and make any use of the ice formed on his pond if he did not unlawfully interfere with the rights of a proprietor lower down the stream. Subject to such restriction, the ice belonged to the plaintiff. *Geer* v. *Rockwell*, 65 Conn. 316, 323, 32 Atl. 924; *Howe* v. *Andrews*, 62 Conn. 398, 400, 26 Atl. 394. As to the defendant, an

upper proprietor, the plaintiff has an exclusive right to the ice on his pond. *Stevens* v. *Kelley,* 78 Me. 445, 450, 6 Atl. 868; *Richards* v. *Gauffret,* 145 Mass. 486, 14 N. E. 535. Hence the court properly declined to charge as requested, and its statement that the plaintiff had a "property right in the ice" was correct as to the law and appropriate to the facts.

In regard to his right to use the stream for the purpose of carrying off pomace and other refuse, which is the subject of the ninth reason of appeal, there is no error in the charge. It was sufficient to instruct the jury that the defendant had a right to maintain and operate his mill on the stream above the plaintiff, and to make a reasonable use of the stream for such purposes; that he had no right by unreasonable use seriously to impair the rights of the plaintiff below; and that whether the defendant's use was reasonable or unreasonable was for the jury to determine from a consideration of all the circumstances of the case. This law applies also to the plaintiff's rights in his use of the stream, and covers well the defendant's request to charge that the plaintiff was bound to exercise reasonable care to protect himself from any damage that he had cause to anticipate. He was not bound to expect that the defendant would inflict wrongful injuries upon him in the use of the brook, and it was not his duty to take steps to protect himself from unexpected, unlawful acts. Moreover, the record shows that he had taken the precautions usually taken by men in such circumstances.

The eleventh and thirteenth errors assigned relate to the defendant's defense of a prescriptive right to use the brook to carry off the refuse resulting from the operation of his mill. He asked the court to charge that an upper riparian proprietor might acquire a right so to dispose of refuse if, "continuously, under a claim

of right for a period of more than fifteen years," he had deposited it in the stream and so had it carried away. He says that to establish such a right it is not necessary to show that its exercise was adverse, "against the interests of the lower proprietor, and known to and acquiesced in by him, or exclusive as against the community at large."

It may be that certain special rights to the use of water on his own land, different from and paramount to the general rights of other owners on the same stream, may be acquired by exclusive enjoyment for fifteen years, and that it is not necessary that such enjoyment should have been adverse. *Ingraham* v. *Hutchinson*, 2 Conn. 584. But if the defendant had acquired, as he claimed, the special prescriptive right to deposit shavings, scantlings, and sawdust in the brook, that right could not justify him in throwing into it the pomace from the cider-mill which, it appears in the finding, he built and first began to use in the fall of 1907. For any damage done to him by that the plaintiff was entitled to recover. *Nolan* v. *New Britain*, 69 Conn. 668, 683, 38 Atl. 703. Moreover, this was an action complaining of a nuisance which the defendant had produced by depositing certain things in the brook above the plaintiff's premises, of such kind and in such quantities that the water came to him polluted, his mill-pond had been nearly filled up, his mill greatly damaged, and the use and value of his property largely taken away. A riparian proprietor cannot acquire by any prescription a right to maintain a nuisance like that described in this complaint and finding. *Platt Bros. & Co.* v. *Waterbury*, 72 Conn. 531, 548, 45 Atl. 154; *Morgan* v. *Danbury*, 67 Conn. 484, 493, 35 Atl. 499. The claim of such a right in another's land is unnatural and unreasonable, and is not sanctioned by law. A prescription to be valid must be reasonable. *Merwin*

v. *Wheeler*, 41 Conn. 14, 25. Therefore the defendant was not entitled to a charge upon this subject, either in the form he asked for it or in any other that recognized and approved of a prescriptive right to continue the nuisance complained of in this action.

In the charge it gave, the court said that "one may acquire a right to corrupt the water of a stream" in such a manner. This statement by itself was more favorable to the defendant than it should have been, and considered in connection with other portions of the charge in which the jury were distinctly instructed that the defendant might acquire the right to make a "reasonable use of the stream," and that the plaintiff could not recover damages for anything done in so using the stream, we think the defendant has no cause for complaint in this respect.

The trial court decided in favor of the plaintiff upon the issues on which was based his claim for equitable relief by injunction, and found that if the defendant were permitted to continue to do the acts complained of, the plaintiff would be irreparably injured and that he had no adequate remedy at law.

There is nothing before us that combats that conclusion of fact. Certainly the privilege of bringing a multitude of actions for damages as they successively are inflicted is not an adequate remedy at law. "The granting or refusal of an injunction rests in each particular case in the sound discretion of the court, exercised according to the recognized principles of equity." *Fisk* v. *Hartford*, 70 Conn. 720, 732, 40 Atl. 906. There was no error in granting the injunction.

In terms the court enjoined the defendant, "under a penalty of one thousand dollars," against throwing the refuse described into the brook in each year after the ice commenced to form until it had formed and was removed. The defendant claims that the court erred

in fixing that penalty or any penalty for a violation of the injunction. He denies the authority of the court to determine in such an order, arbitrarily, in advance, and without hearing, that the person restrained shall be liable to pay the full amount of the penalty if he commit only a merely technical breach of the order, without inflicting actual damage.

We think that the law and present practice of this State do not support his reasoning, or lead to the conclusion that the full penalty could be recovered as of course in such a case. In our earlier practice, a decree enjoining the performance, or prohibiting the doing, of a particular act or thing, was usually enforced by a penalty, and the whole sum might be recovered by writ of *scire facias* or by action of debt. The power of the court was then incomplete and inefficacious in many instances. Process for contempt as a mode of enforcing the execution or punishing the violation of such a decree, although well known in England, had not been introduced into practice here. 2 Swift's Digest, 280. Gradually methods were provided, in some cases by statute and in others in practice. In 1851 this court said that process for contempt, although it had not been resorted to "until somewhat recently," was then "frequently adopted," and considered it "a most proper and salutary mode of proceeding," and recommended the practice to the Superior Court. *Lyon* v. *Lyon*, 21 Conn. 185, 198. If an injunction be disregarded, and the act or thing required or forbidden be for the benefit of a party interested, proceedings for the punishment of the contempt may be instituted by that party, and are civil in character. *Sherwood* v. *Sherwood*, 32 Conn. 1; *Rogers Mfg. Co.* v. *Rogers*, 38 id. 121; *Welch* v. *Barber*, 52 id. 147, 156. The object of such a proceeding, however, is to secure respect and obedience to lawful authority, for the public good; and it has never been,

and should never be, the practice to apportion to the injured party any part of any fine that may be imposed. In *Rogers Mfg. Co.* v. *Rogers*, 38 Conn. 121, 124, this court declined to advise any such division, because, aside from the reasons referred to, it would be difficult in an action of such a kind, "to know whether the petitioner was injured at all, and if any, how much"; and "an inquiry on this subject" and "a trial of the case at large" would be required to determine the amount of the damage. This language clearly indicates that not a specific sum, but only his actual damages, could be recovered by a party injured by the disobedience of an order of injunction. It is true that it does not appear that in the case then under consideration any penalty had been named in the order, and it was then said that a penalty might be enforced by *scire facias* in favor of an injured party "where an act is prohibited under a penalty to be paid to him." But it seems plain that the court had in mind no other rule for determining the sum that such a party might recover than the one it referred to in the language which we have quoted above. No good reason has been given why a different rule should ever be adopted. It was recognized and approved by this court in *Gorham* v. *New Haven*, 79 Conn. 670, 66 Atl. 505, wherein, in an action for damages, a judgment for an amount greater than the injunction penalty was upheld. We said in that case that the plaintiff might have pursued an action to recover the penalty prescribed in the injunction, as an alternative remedy "for the same injury," and that a recovery in one form of action would bar all recourse to the other. In either form of action, however, the same measure of damages for the same injury should be used. Moreover, such actions should be governed by the spirit and principles of General Statutes, § 768, which declares that judgment shall not be rendered for the

whole penalty of a penal bond, but only such damages shall be assessed as are equitably due. The former harsh rule of enforcing to the full amount a specific penalty, arbitrarily fixed beforehand, is not necessary now, is not consistent with modern principles of practice, and should not be followed. In process for contempt to punish for the violation of an injunction decree, the severity of the punishment should be adapted and determined, not absolutely by any penalty prescribed before the offense, but with regard chiefly to the circumstances, character, and extent of the violation. There is no reason, therefore, for the defendant's assignment of error relating to the naming of a penalty in the order of injunction.

The defendant takes exception to certain rulings upon the rejection and admission of evidence. He desired to show that for six or seven years before he began to make cider in his mill in the fall of 1907, pomace from another person's mill had floated into the plaintiff's pond without polluting his ice as he had testified it was polluted in February, 1909. Such evidence was irrelevant and immaterial. It did not tend to disprove the cause of the injuries to the plaintiff's ice at the time such injuries were alleged to have been inflicted. It may well have been that the quantity of pomace in the pond was insignificant and harmless until the defendant made his contribution to it. The fact that others put refuse into the brook which combined with the defendant's refuse to produce the injury, would not relieve him from liability. If different persons by several acts foul the same stream, each is responsible for the results of his own wrong, and may be restrained from doing the acts for which he is chargeable. *Stedman* v. *O'Neil,* 82 Conn. 199, 72 Atl. 923; *Watson* v. *New Milford,* 72 Conn. 561, 45 Atl. 167; *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531, 45 Atl. 154.

Evidence that the defendant made cider for the plaintiff and threw the pomace into the brook would not tend to excuse him for so disposing of other pomace in such quantities as to cause the pollution complained of, and certainly would not be sufficient to show that the plaintiff had so contributed to his own injury as to deprive him of his right to equitable relief.

In presenting his case, the plaintiff was allowed to put in, against the defendant's objection, some evidence tending to prove that the defendant had not acquired any prescriptive right to throw his refuse into the brook, which he had set up as a special defense. It does not appear, and it is not reasonable to suppose, that this evidence, because it was given before the usual and strictly proper time to give it, had any greater weight with the jury or in any way prejudiced the defense in their minds, or was in other respect injurious to the defendant. Moreover, the trial court is vested with a liberal judicial discretion in conducting the inquiry in any case, and its rulings will not be set aside on appeal unless it clearly appears that such discretion has been abused. *Adams* v. *Herald Publishing Co.*, 82 Conn. 448, 74 Atl. 755; 3 Wigm. on Ev. § 1867.

The thirteenth and fourteenth reasons of appeal recite long passages in the charge, as each containing error. One of these passages occupies a page of the printed record, and the other two pages and a half. In neither of them is any particular error pointed out, and it is not indicated with sufficient definiteness what are the mistakes claimed to have been made. General Statutes, § 798. Neither assignment specifies the statement of law which is challenged as unsound. *Water Commissioners* v. *Robbins*, 82 Conn. 623, 74 Atl. 938. We have, nevertheless, examined these portions of the charge in considering certain of the requests to charge, and we have discovered no proposition of law which

was not correctly stated, adapted to the issues, and proper to give to the jury in this case.

There is no error.

In this opinion the other judges concurred.