[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO DISBURSE BOND
This is a decision on a motion filed by the plaintiff in the above entitled summary process action to disburse a $2000 bond filed by the defendants at the time of the issuance of a temporary injunction. The injunction has in the meantime been vacated by the court. The $2,000.00 bond was posted by the defendants, Roy Jansson and Lyvia Jansson, with the clerk of the Superior Court pursuant to Connecticut General Statutes § 52-472.
 FACTS
This lawsuit is a summary process action concerning the possession of a single family house at 90 Grenelle Street, Bridgeport, Connecticut. The plaintiff, First National Bank of Chicago, Trustee, is the record title owner of the property at 90 Grenelle Street, Bridgeport having purchased the property at a foreclosure sale. The defendants, Roy Jansson and Lyvia Jansson, were the former owners of the property in question, appearing parties in the foreclosure lawsuit and occupants of CT Page 5231 the premises at 90 Grenelle Street, Bridgeport during the pendency of the foreclosure as well as during the period of time that the premises have been owned by the plaintiff, First National Bank of Chicago, Trustee, as the successful purchaser at the foreclosure auction. A substantial amount of litigation has ensued between the parties, taking place in all three courthouses in the City of Bridgeport; Superior Court Judicial District of Fairfield, 1061 Main Street, Bridgeport, Connecticut in the foreclosure action and post foreclosure remedies, United States Bankruptcy Court District Court of Connecticut, 915 Lafayette Boulevard, Bridgeport, Connecticut in two separate chapter 7 proceedings and finally in the Superior Court, J.D. of Fairfield, Housing Session, 172 Golden Hill Street, Bridgeport in a summary process action and post judgment writ of audita querela.
By a writ, summons and complaint returnable August 23, 1995 the plaintiff commenced a summary process action against Roy Jansson, Lyvia Jansson and the children of Roy and Lyvia Jansson seeking possession of the house at 90 Grenelle Street, Bridgeport. The plaintiff stated "that on December 9, 1994 the plaintiff took title by virtue of the court approving its bid in a foreclosure by sale regarding the premises known as 90 Grenelle Street, Bridgeport." The First Count of the complaint alleged that the lease had terminated by lapse of time. The second count alleged that the "the defendants may of had the right or privilege to occupy said premises other than under a rental agreement or a lease, as a result of the foregoing facts." A Notice to Quit possession was served on July 24, 1995 requiring the defendants to vacate the premises on July 31, 1995.
The defendants failed to vacate the premises. Counsel filed an appearance for the defendants along with a motion to dismiss on September 6, 1995. After briefs and oral argument the motion to dismiss was denied on September 27, 1995. The defendants failed to plead further. On September 28, 1995 the plaintiff filed a motion for default for failure to plead. Default judgment entered on October 6, 1995. By operation of law the default judgment gave the defendants the right to apply for a further stay of execution for up to six months.Connecticut General Statutes § 47a-36 and § 47a-39.
On October 18, 1995 the defendants filed a motion to open the judgment and set aside the default. That motion was granted CT Page 5232 by this court on October 23, 1995. The plaintiff then filed a motion for default for failure to plead on October 27, 1995 which was followed by the filing of a request to revise by the defendants dated November 2, 1995.
The parties at the same time litigated matters in the foreclosure case which had been pending in the Superior Court, Judicial District of Fairfield at Main Street in Bridgeport. An ejectment was issued in the Judicial District foreclosure action against the two defendants and their minor children. As a result of the issuance of that order of ejectment the parties negotiated a stipulation in this Housing Session summary process case on November 14, 1995. The defendants did not sign the stipulation individually. This court required the defendants be physically present in court for a canvass prior to the entry of a judgment.
The stipulation provided that judgment would enter in favor of the plaintiff as against all named defendants including all of the adult children of the defendants with a final stay of execution through and including November 30, 1995. At the time of the defendant's surrender of possession of the premises, the plaintiff would pay to the defendants the further sum of $1000.00. The stipulation also contained certain other terms relating to the possible purchase of the property by the defendants. The plaintiff's offer to purchase contained in the stipulation would expire by its terms on November 30, 1995.
The defendants failed to come to court on October 29, 1995 for the canvass. At the hearing on October 29, 1995 both counsel appeared. The court vacated its October 23, 1995 order opening the judgment thus reinstating the October 6, 1995 default judgment. Both Counsel agreed that their clients would be bound by the terms and conditions of the November 14, 1995 stipulation. The plaintiff specifically agreed that it would not seek an execution until after November 30, 1995.
The defendants failed to purchase the premises or vacate on November 30th and on December 11, 1995 the plaintiff obtained an execution. Prior to the service of the execution and its enforcement on January 15, 1996, the defendants filed a Chapter 7 application with the Bankruptcy Court in Bridgeport. Since the Bankruptcy Clerk's office was closed on January 15, 1992, Alan H. W. Shiff, Judge of the Bankruptcy Court, was personally served by the defendants at his residence in Fairfield County. CT Page 5233 The automatic stay was in effect and the plaintiff returned the summary process execution to the Housing Session Clerk.
The plaintiff obtained relief from the automatic stay from the Bankruptcy Court on March 19, 1996 permitting the execution to be issued in the instant summary process action. The defendants claimed that they did not receive notice of the March 19, 1996 hearing in the Bankruptcy Court. They had filed an objection to the plaintiff's request for relief from stay on February 8, 1996. On April 1, 1996 the defendants filed in the Bankruptcy Court a motion to reconsider and vacate. On April 4, 1996 the defendants filed a motion to enjoin the issuance of the execution until a hearing could be held with proper notice to the defendants in the Bankruptcy Court concerning the termination of stay.
In the meantime the Trustee in bankruptcy filed its own motion to dismiss the Chapter 7 petition for the failure of the defendants to appear at two or more meetings scheduled by the trustee.
The execution having been issued by the Housing Session, service was made by the deputy sheriff on the Commissioner of Public Works of the City of Bridgeport and the defendants with the actual eviction scheduled for April 15, 1996 at 1:00 pm. April 15, 1996 at 9:30 a.m. the defendants appeared pro se in the Housing Session tendering to the court on an ex parte basis an application for temporary injunction, an order to show cause and a motion to quash the execution in the nature of a writ of audita querela. The plaintiff's counsel, who has offices in Hartford, was unable to be contacted but had general knowledge that the defendants were attempting on the day of issuance of execution to obtain a writ of audita querela. The issue raised by the defendants in their moving papers for the writ of audita querela was whether the defendants failed to receive proper notice from the Bankruptcy Court for the March 19, 1996 decision on the motion to terminate the stay.
This court issued a temporary injunction at 12:30 p. m. on April 15, 1996 and entered the following order, "that the plaintiff along with its employees, agents and any person acting under the direction or on behalf of the plaintiff shall not evict the defendant Roy M. Jansson, et al, remove defendant's possessions, evict minor children or dependents of the defendant or in any way interfere the defendants use and enjoyment of the CT Page 5234 premises at 90 Grenelle Street, Bridgeport Connecticut until further order of this court. This order is entered effective upon the posting of bond by the defendants of $2,000.00."
The defendants, Roy M. Jansson and Lyvia L. Jansson, posted $2,000.00 as bond with the Housing Session clerk and the court executed the temporary injunction at 12:30 p. m.. The clerk notified the plaintiff's counsel of the issuance of the temporary injunction. The execution did not take place as scheduled.
An order to show cause was issued requiring a court hearing on April 22, 1996. The hearing was held on writ of audita querela with all parties being represented by counsel of record. After an evidentiary hearing on April 22 and April 24, 1996, this court terminated the temporary injunction signed on April 15, 1996 and denied the writ of audita querela. The court ordered that the clerk issue the execution immediately. The execution was issued and served. The defendants were removed from the premises on April 29, 1996.
Thereafter the plaintiff filed this motion to request that the court clerk pay to the plaintiff the $2,000.00 bond for damages sustained by the plaintiff because of the delay and additional expenses caused to the plaintiff by issuance of the temporary injunction and the hearings held thereon.
The plaintiff offered evidence to indicate that additional expenses of $450.00 for Sheriff Donald Mattice as well as his crew of movers was paid by the plaintiff. The sheriff and the movers were at the premises at 12:30 p. m. ready to effect the 1:00 p. m. removal on April 15, 1996. On April 29, 1996 a deputy sheriff with a crew of movers actually moved the defendants and therefore the plaintiff had to pay two moving costs each in the amount of $450.00. The cost of one $450.00 removal was claimed as damages. The plaintiff further claimed additional attorneys fees in the amount of 12 hours at the rate of $150.00 per hour. The plaintiff's counsel testified to the additional expenditure of $1800.00 in attorneys fees necessary to defend the writ of audita querela prepare and attend the two court hearings of April 22, 1996 and April 24, 1996.
The court heard oral argument and evidence from both the plaintiff and the defendants on the motion to disburse the $2000 bond. CT Page 5235
DISCUSSION OF LAW
"The writ of audita querela provides relief from a judgment at law because of events occurring subsequently which would cause discharge of a judgment debtor. . . . A writ of audita querela depends upon a showing of new matter in defense . . . arising, or at least raisable for the first time, after judgment." Ames v. Sears, Roebuck Co., 206 Conn. 16, 21
(1988). Its use is most common in summary process judgments.Westfarms Mall Associates v. Kathy Johns, Inc., H-733, March 17, 1986, (Goldstein, J.); Knaus v. Lomas, 1990 Ct. Sup. 4038, November 20, 1990, H-932, November 16, 1990, (Berger, J.);Wyngate, Inc. v. Bozak, Inc., H-684, September 11, 1985, (Goldstein, J.); Norman Associates v. Vann, H-437, August 4, 1983, (Aronson, J.); Seven Fifty Main Street AssociatesLimited Partnership v. Spector, H-706, November 29, 1985, (Goldstein, J.); Wheeler v. Jones, SNBR-434, July 31, 1995, (Tierney, J.); Two Stephenson Conn. Civ. Proc. Sec. 209 (2d Ed). The issues in a writ of audita querela in a summary process action are whether or not events that have occurred since the entry of the judgment would prevent the judgment from being enforced on equitable grounds. Normal equitable considerations are used in all of the above summary process cases. WestfarmsMall Associates v. Kathy Johns, Inc., H-733. There is no section of the practice book referencing the ancient writ of audita querela. No statute authorizes the writ of audita querela. A writ of audita querela is a common law remedy not a statutory remedy. There is no right of appeal from a writ of audita querela and there is, therefore, no automatic stay of execution on a writ of audita querela. Wheeler v. Jones,
SNBR-434, p. 10.
The granting of the temporary injunction in support of the order to show course was in accordance with the statute.
 "Any judge of any court of equitable jurisdiction may, on motion, grant and enforce a writ of injunction, according to the course of proceedings in equity, in any action for equitable relief when the relief is properly demandable, returnable to any court, when the court is not in session. Upon the granting of the writ, the writ shall be of force until the sitting of the court and its further order thereon unless sooner lawfully dissolved." Connecticut General Statutes § 52-471.
CT Page 5236
The court issued the April 15, 1996 temporary injunction in support of the order to show cause so that the status quo would be maintained until a hearing on the writ of audita querela. The court ordered the posting by the defendants of a $2000 bond with the clerk prior to the issuance of the temporary injunction in accordance with the statute.
 "No temporary injunction may be granted, except in favor of the state or of a public officer thereof in respect to any matter of a public nature, until the party making application therefor gives bond, with surety satisfactory to the court or judge granting the injunction, to the opposite party, to answer all damages in case the plaintiff fails to prosecute the action in which the injunction is applied for to effect; provided a bond need not be required when, for good cause shown, the court or a judge is of the opinion that a temporary injunction ought to issue without bond." Connecticut General Statutes § 52-472
This court was of the opinion that a temporary injunction should issue only with a bond and established the bond at $2000.00. This motion is in effect asking this court to rule on "to answer all damages in case the plaintiff fails to prosecute the action in which the injunction is applied to effect."
There appears to be very little recent law discussing the standards by which a court should use to arrive at "answer all damages".
The court has examined a number of bond statutes. The first is the civil action recognizance statute ConnecticutGeneral Statutes § 52-185. The purpose of the recognizance is "to insure that the plaintiff shall prosecute his action to effect and answer all costs for which judgment is rendered against him." Connecticut General Statutes § 52-185(a)
Furthermore the court may order an increase in the bond which is being taken in accordance with the recognizance statute of §52-185 or an appeal under Connecticut General Statutes § 52-186. In determining the sufficiency of the bond Connecticut GeneralStatutes § 52-186 "the court shall consider only the taxable costs which the plaintiff may be responsible for under section52-257, except in no event shall the court consider the fees or charges of expert witnesses notwithstanding that such fees or CT Page 5237 charges may be allowable under said section." ConnecticutGeneral Statutes § 52-186(a) Therefore it appears that the damage standard for collecting on a recognizance is limited to taxable costs of the action. This is a different standard than the collection of a bond posted for a temporary injunction, "to answer all damages in case the plaintiff fails to prosecute the action."
"In any action on a penal bond, containing any condition which has been broken, such damages only shall be assessed as are equitably due, and judgment shall not be rendered for the whole penalty, unless it appears to be due." ConnecticutGeneral Statutes § 52-238(a). This statute has been held to apply to recognizances and bonds to release attachments.McNamara v. Mattei, 74 Conn. 170, 175 (1901). A further examination must be conducted to determine if the standards set by this "action on an penal bond" statute, Connecticut GeneralStatutes § 52-238(a), governs the disposition of bonds posted pursuant to a temporary injunction.
The most recent enactment by the legislature of a bonding procedure is found in the prejudgment remedy statute modified effective January 1, 1994.
 "The defendant may request that the plaintiff post a bond, with surety, in an amount determined by the court to be sufficient to reasonably protect the defendant's interest in the property that is subject to the prejudgment remedy against damages that may be caused by the prejudgment remedy." Connecticut General Statutes § 52-278d(d).
 "The defendant posts a bond, with surety, in a sum determined by such judge to be sufficient to indemnify the adverse party for any damage which may accrue as a result of such stay. "Connecticut General Statutes § 52-278d(c).
 "In determining whether to grant a request for a bond and, if granted, the amount of the bond to be set, the court shall consider the nature of the property subject to the prejudgment remedy, the methods of retention or storage of the property and the potential harm to the defendant's interest in the property that the prejudgment remedy might cause." ConnecticutCT Page 5238 General Statutes § 52-278d(e).
It appears to this court that the restrictive reading of taxable costs relating recognizances at the institution of the lawsuit or in a bond for appeal, is not found in the bond necessary for an injunctive relief action. Injunction bonds are more akin to prejudgment remedy bonds.
The court also examined case law. "A temporary injunction is a preliminary order of court, granted at the outset or during the pendency of an action, forbidding the performance of the threatened acts described in the original complaint until the rights of the parties respecting them shall have been finally determined by the court." Deming v. Bradstreet, 85 Conn. 650,659 (1912). "The principal purpose of such an in junction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits." Olcott v.Pendleton, 128 Conn. 292, 295 (1941).
"The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court." Scoville v. Ronalter, 162 Conn. 67, 74 (1971). In the event that a person against whom an injunction has been ordered violates the terms of the injunction sanctions can be imposed for violation of the court order.
 "It is well settled that the imposition of sanctions to compel the observance of its orders rests within the discretion of the trial court and will not be disturbed on review unless there is an abuse of discretion. . . . Generally, a sanction should not serve as a punishment or penalty. Courts should be reluctant to employ the sanction of dismissal except as a last resort. Such drastic action is not, however, an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority." Fox v. First Bank, 198 Conn. 34, 39 (1985)
It appears from these line of cases that the general rule for determining damages for violation of an injunction, unless there is a deliberate, contumacious or unwarranted disregard for the court's authority, is consideration of the actual damages sustained by the plaintiff. How should those damages be measured? A previously set specific sum not related to the CT Page 5239 actual damages is not the proper measurement of the recovery by a party injured by the disobedience of an order of injunction.Lawton v. Herrick, 83 Conn. 417, 427 (1910).
In Lawton the court entered an injunction "under a penalty of one thousand dollars against throwing the refuse described into the brook in each year after the ice commenced to form until it had formed and was removed." In fixing the penalty for the violation of the injunction "such actions should be governed by the spirit and principles of General Statutes § 768, which declares that judgment shall not be rendered for the whole penalty of a penal bond, but only such damages shall be assessed as are equitably due. The formal harsh rule of enforcing to the full amount a specific penalty, arbitrarily fixed beforehand, is not necessary now, is not consistent with modern principles of practice, and should not be followed. In process for contempt to punish for the violation of an injunction decree, the severity of the punishment should be adapted and determined, not absolutely by any penalty prescribed before the offense, but with regard chiefly to the circumstances, character, and extent of the violation." Lawton v. Herrick,
supra 427-428.
Therefore this court concludes that the plaintiff is not limited to taxable costs or court costs. The plaintiff is entitled to prove damages using all forms of equitable considerations including additional expenses incurred by the delay or increase in expenses caused by the second service of execution, additional costs incurred to the plaintiff to resist the application of the writ and loss of use of the property from April 15 to April 29, 1996. In any event the amount of damages can not exceed the $2000.00 bond.
Because of the harm that can be caused by the issuance of a temporary injunction, the Supreme Court of Connecticut sitting in the Third Judicial District, Bridgeport in 1904 furnished the following admonition which is instructive.
 "These injunction proceedings might thus be dismissed, but lest our silence be construed as conveying a quasi approval of the methods pursued, we feel constrained to add that the injunction is one which ought never to be have been issued, much less ex parte and without bond. The high powers which are vested in courts of equity to make injunction orders are essential to the CT Page 5240 well-being of society, but unless the power is exercised with care and judgment, with a regard for recognized principles determining the right of such interference, and with something more than a perfunctory compliance with the statutory requirement as to bonds, courts may easily become the instruments of hardship and oppression." McAllin v. McAllin, 77 Conn. 398, 402 (1904).
 McAllin involved an ex parte temporary injunction issued without bond. The plaintiff's husband, who owned the dwelling house in which the plaintiff resided, conveyed it to his brother, the defendant. The defendant obtained an ex parte temporary injunction without bond thus moving her from the premises, taking her and her goods by force. After a lawsuit was filed by the plaintiff to recover damages for the unlawful, forceable seizure, removal and detention of her household goods and her furniture, the jury awarded what was in 1904 a large amount of money. The court took upon it themselves to indicate that the injunction never ought to have issued much less ex parte and without bond.
CONCLUSION OF LAW
The court has found a number of cases indicating that the actual damage standard is the appropriate standard for courts issuing awards for violation of an injunction. Further it is of the opinion that the Lawton v. Herrick, and its progeny indicate that such damages shall be assessed by using equitable principles to determine the loss that actually has been sustained by the injured party.
The court has been able to find only one reported case in which the bond given upon the issuance of a temporary injunction was the subject of a dispute. Lawlor v. Merritt, 81 Conn. 715
(1909) involved the issuance of a temporary injunction barring the defendants from the use of certain imitations of the registered label of plaintiff's United Hatters of North America. The plaintiff gave a bond of $5,000. Connecticut GeneralStatutes § 1004 authorized the issuance of a preliminary injunction. The language of § 1004 in 1909 is virtually identical to the language of the current injunction bond statute, Connecticut General Statutes § 52-472. Five thousand dollars was the bond posted "to answer all damages in case the plaintiff in the action in which the injunction is applied for CT Page 5241 fails to prosecute the action to effect." The plaintiff prosecuted his action to effect and a judgment was entered in that action in favor of the defendants against the plaintiff in the amount $387.61 substantially less than $5000.00 bond. There was evidence before the trial judge that the defendant did sustain damages by the loss of use of its trademark by reason of the temporary injunction during the pendency of the instant lawsuit.
The Supreme Court found that "the trial court properly found that same damages resulted from obedience to the injunction order." Lawlor v. Merritt, supra 720. "There were elements of damages that the court below may have properly considered, other than the loss from the sale of hats. Under the issues raised by the pleadings it was for the plaintiff to show that the defendants had suffered no damage, and not for the defendants to demonstrate that they had suffered loss by obeying the injunction order." Lawlor v. Merritt, supra 721.
The theory of collection on a bond properly posted is supported by common law which held that a person who posted a bond and was not successful in the lawsuit would have to pay actual damages sustained on the basis that the plaintiff should prosecute his appeal to effect, and answer all damages in case he should not make his plea good. Lockwood v. Jones, 7 Conn. 421,435 (1829).
In 1861 the Supreme Court decided a case involving the statutory posting of a replevin bond. Persse v. Watrous,30 Conn. 139, 145 (1861). The bond stated, "and in case he should not make his plea good should deliver the goods to the officer who attached them, . . . on failure thereof pay the debt on damages and costs recovered in said suit. . . . The action is on the bond, alleging the forfeiture and demanding the penalty in conformity with precedent and principle. For that penalty, or any less sum equitably due as an alternative by force of the statute, and which it became the duty of the obliger to pay when he refused to deliver the goods to the officer, as he well knew, bringing the action was a sufficient demand." Persse v.Waltrous, supra 149.
Though statutes prescribe the posting of bond, a common law action on a bond has been known in the State of Connecticut for generations. Mix against Page, 14 Conn. 329 (1841). In an action at common law on a bond where the principal has CT Page 5242 insufficient assets or assets located out of the country, the surety is liable for just and real damages on said bond. "This is an action at common law, upon a recognizance with conditions; which condition is, that the plaintiff in the original suit should prosecute his action to effect, and pay all damages in case he should not make his plea good." Mix against Page, supra 333. This is and remains the common law of the State of Connecticut. Connecticut State Employees Assn. v. AFSCME,188 Conn. 196, 198 (1982); Lawlor v. Merritt, supra 719.
This court concludes that the proper measure of damages in the return of the $2000 bond is any loss sustained by the plaintiff due to its failure to obtain possession of the real property on April 15, 1996. The plaintiff claims that those damages exceed $2000 but recognizes that for the purpose of this motion its maximum claim is the $2000.00 bond. The plaintiff has proven that it incurred an additional out of pocket cost of $450.00 for a second execution. The plaintiff is also asking for an allowance as damages to attorney fees incurred by it for the period of April 15, 1996 through to April 29, 1996, the date of the actual execution. The court finds that the evidence is credible that the plaintiff did sustain additional attorney fees of $1800.00 for that period. The court finds the $1800.00 of attorneys fees reasonable.
"It is well settled that the decision to award attorneys fees and other costs rests soley with the trial courts."Labenski v. Goldberg, 41 Conn. App. 866, 871 (1996). "The common law rule in England has traditionally been that counsel fees are awarded by the court to successful parties." Flemingv. Garnett, 231 Conn. 77, fn. 12 (1994). This is known as the "English rule." Alyeska Pipeline Service Co. v. WildernessSociety, 421 U.S. 240, 247 n. 18, 95 S.Ct. 1612, 44 L.Ed.2d 141
(1975); Doe v. Heintz, 204 Conn. 17, 21-22 (1987). Connecticut has adopted the "American Rule". Doe v. State, 216 Conn. 85,106 (1990). "A prevailing litigant ordinarily is not entitled to collect a reasonable attorney's fee from the opposing party as part of his or her damages or costs." Matyas v. Minck,37 Conn. App. 321, 335 (1995).
Attorney fees in Connecticut can be awarded under the following circumstances:
1) Statutory authorizing attorney fees by prevailing litigant. O'Leary v. Industrial Park Corp., 211 Conn. 648, 651
CT Page 5243 (1989)
2) contract providing for the payment of attorney fees by a defaulting party. Litton Industries Credit Corp. v Catanuto,175 Conn. 69, 76 (1978)
3) common law punitive damages limited to the costs of litigation. Markey v. Santangelo, 195 Conn. 76, 80 (1985);Manning v. Michael, 188 Conn. 607, 619 (1982)
4) collection of attorney fees where the opposing party has acted in bad faith. Roadway Express, Inc. v. Piper, 447 U.S. 752,765-766, 100 S. Ct 2455, 65 L.Ed.2d 488 (1980); Fattibene v. Kealey,18 Conn. App. 344, 360 (1989)
5) the inherent power of the trial court to order attorney fees. Hall v. Cole, 412 U.S. 1, 15, 93 S.Ct. 1943, 36 L.Ed.2d 702
(1973), Mallory v. Mallory, 207 Conn. 48, 58 (1988);Dobozy v. Dobozy, 41 Conn. App. 861, 865 (1996).
This court concludes that it has the inherent power as a Superior Court under the facts of this case to order attorney fees as actual damages sustained by the prevailing party in defending a temporary injunction. Oakley v. Commission on HumanRights and Opportunities, 38 Conn. App. 506, 512 (1995), aff'd237 Conn. 28, (1996).
The court after hearing the evidence, in weighing the credibility of the witnesses, finds that the plaintiff has sustained the following damages: (1) $450.00 to Sheriff Donald Mattice for the aborted April 15, 1996 execution, and (2) $1800.00 to plaintiff's law firm for 12 hours of attorney's fees at the rate of $150.00 to defend the writ of audita querela, all attorney's fees having been incurred after April 15, 1996 to the date of the decision on the writ of audita querela.
This matter was decided by the court upon a motion to disburse bond. Was this the proper procedure? It appears that an ancient writ has been the appropriate remedy for such a proceeding; a writ of scire facias. Clime v. Gregor, 145 Conn. 74,77 (1958). Hospital of St. Raphael v. New Haven SavingsBank 205 Conn. 604, 615 (1987); William M. Raveis Associatesv. Kimball, 186 Conn. 329, 335-336 (1982). A writ of scire facias may be taken out from the clerk of the court requiring the defendant to appear before the court and to show cause why CT Page 5244 the plaintiff may not require the defendant to disburse monies which is being disputed by the parties.
A writ of scire facias is found in at least 19 current Connecticut General Statutes. The statutes relate to garnishments, claims of creditors, attachments, and various probate matters. It applies to recognizances or bonds made to release attachments. McNamara v. Mattei, supra 175. The statutory procedure authorizes "Upon any further or other breach of condition, the obligee, his executors or administrators may take out a scire facias against the obligor, his executors or administrators, from the clerk of the court in which the judgment was given, to show cause why execution should not awarded for the money then due, or damages then sustained."Connecticut General Statutes § 52-238(b)
In recent years the ancient writ of scire facias has been disfavored. It has been replaced with more modern procedures. An example is found in Levick v. Norton, 51 Conn. 461 (1884) which involved a statute requiring a driver who violated the designated rules of any road to "pay to the person injured treble damages and costs; and the owner of such vehicle shall, if the driver is unable to do so, pay the damages, to be recovered by writ of scire facias." Levick v. Norton supra 468. That statute has long since been repealed. The common law remedy requiring a writ of scire facias in Levick has been replaced by Connecticut General Statutes § 14-154a which expressly makes the owners and lessors liable "to the same extent as the operator." Gionfriddo v. Avis Rent A Car System,Inc., 192 Conn. 280, 287, 472 A.2d 306 (1984).
A line of cases starting in 1984 seem to declare the death of the writ of scire facias. These cases indicate that there are other procedures which comply with due process sufficient to replace the ancient writ of scire facias. Despite these line of cases the legislature still has on its books the above entitled remedies. Vidal Realtors of Westport, Inc. v. Harry Bennett Associates, Inc., 1 Conn. App. 291 (1984)
Justice Hull, then sitting on the Appellate Court, had the opportunity to discuss the writ of scire facias.
 "The ancient and honorable writ of scire facias has been dying a lingering death in Connecticut for some time. The principal assailant is Edward L. Stephenson, CT Page 5245 who states in his treatise on Connecticut civil procedure: `the writ of scire facias as used in garnishment in this state is an historical anachronism and it should be replaced by a simpler procedure by motion' 1 Stephenson Conn. Civ. Proc. 74. . . . As Stephenson points out, in 1953 the use of scire facias to cite in an administrator or executor was abolished. . . . `The whole scire facias proceeding is unnecessarily complicated and serves no purpose that could not be served more quickly and with less expense by a motion to show cause for, after all, scire facias means cause to be known.' 1 Stephenson Conn. Civ. Proc. 74. The noted author also states that the trial of a scire facias action may be by court or jury and is not a privileged case. A near fatal blow was rendered by Justice Parskey in Burchett v. Roncari, 181 Conn. 125, 127, 434 A.2d 941 (1980), wherein he stated: `It is rather obvious that these ancient writs of execution have become so encrusted with procedural barnacles that frequently they are not suited to the needs of modern society.'" Vidal Realtor of Westport, Inc. v. Harry Bennett Associates, Inc., supra 293-294.
Justice Hull further had a chance in 1986 to opine inSleavin v. Greenwich Gynecology Obstetrics. P.C., 6 Conn. App. 340,346 (1986) on law that "linger on life support systems:"
 "For another example of the lingering death of a much more ancient legal concept, see the administration of the legal last rights to scire facias, Vidal Realtors of Westport, Inc. v. Harry Bennett Associates, Inc., 1 Conn. App. 291, 293-296, 471 A.2d 658, cert. denied, 192 Conn. 804, 472 A.2d 1284 (1984)." Sleavin v. Greenwich Gynecology Obstetrics, P.C., supra 346, fn. 5.
Judge Fuller in Paine Webber, Inc. v. Chapman,1993 Ct. Sup. 4578, May 11, 1993, discussing whether or not to dismiss a interpleader action; i.e. use a writ of scire facias rather than a interpleader action stated: "Scire facias is not a clearly more efficient remedy than an interpleader action under the facts of this case, if it is available at all." Paine Webber,Inc. v. Chapman, supra 4579.
Therefore this court follows the direction of Justice Hull and considers this issue raised on motion without requiring the CT Page 5246 necessity of a scire facias proceeding. The plaintiff and the defendants have been given a full and complete evidentiary hearing upon proper advance notice based on a written motion.
This court finds the plaintiff has sustained its burden of proof under Connecticut General Statutes § 52-472 that it has sustained "damages". On equitable considerations the damages are found to be $450.00 for sheriff's fee and at least $1550.00 for attorneys fees all incurred by the plaintiff from April 15, 1996 to April 29, 1996. The damages are due to the delay in enforcing its judgment which rightfully could have enforced on a April 15, 1996. These "damages" exceeds the bond.
This court orders that the full $2000.00 bond be paid to the plaintiff.
BY THE COURT,
KEVIN TIERNEY, JUDGE