TOWN OF CHESHIRE *vs.* TOWN OF BURLINGTON.

The statute (Rev. Stat., tit. 42, § 6,) provides that no inhabitant of any town in this state, removing to another town, shall gain a settlement in the latter, unless he shall have supported *himself and his family* for six years therein. Held that the term "family" embraces all the persons whom it is the right of the head of the family to control and his duty to support.

Where therefore a man had 'abandoned his wife, and removed to another town, where he resided six years and supported himself without aid from the town, but his wife was, during a part of that time, supported as a pauper in the town which he left, it was held that he gained no settlement in the town where he resided.

ASSUMPSIT, to recover for money expended for the support of a pauper.

Harmon Wooding and his wife removed to the town of Burlington from the town of Cheshire, where they were legally settled, in the year 1846. Soon after he abandoned his wife, who was subsequently returned to and supported as a pauper by the town of Cheshire. After this, and while his wife was receiving support from the town of Cheshire, Wooding lived with another woman in Burlington, and for more than six years supported himself there without help from the town, and no taxes during that time were demanded of him; but he afterwards became a pauper and received support as such from the town of Burlington. The town of Cheshire sued the town of Burlington for money expended in the support of the wife, claiming that the husband, by his residence in Burlington, had acquired a settlement in the town, and that the settlement of the wife followed his.

On these facts the case was reserved by the superior court for the advice of this court.

*Doolittle*, for the plaintiffs.

*McFarland*, for the defendants.

SANFORD J. The pauper for whose support this suit was instituted, had a legal settlement with her husband in Cheshire, prior to, and at the time of their removal into Burlington in 1846, and that settlement of course continued and is still in Cheshire, unless it has been lost by reason of the acquisition of a different one in some other place. A settlement once acquired is never changed but by the acquisition of another in its stead.

The pauper was a married woman. Her husband was all the time residing in this state. And though he had left her society and formally declared his intention to abandon her forever, yet he could at any time have changed his mind, revoked his declared determination, and resumed all his marital rights. And she could have gained no settlement in her own right by commorancy, because, notwithstanding the abandonment, she was still *sub potestate viri.*

The plaintiffs' claim is, that the husband acquired a settlement in Burlington, because he resided there and supported himself for six years together, while she lived in another town, and that then the law conferred that settlement upon her because she was his wife.

But the statute (Rev. Stat., tit. 42, Sec. 6,) requires, in order to the acquisition of a settlement by commorancy, that the party shall not only support himself but *his family* also, if any he have, " without his or their becoming chargeable to such town or to the town that may by law be liable to be charged for the support of such person or family ; " and we think that the pauper was not only the wife of Harmon Wooding, but also a member of his family within the meaning of this statute, and that he having neglected to support her, while her necessities were supplied by Cheshire, acquired no settlement in Burlington even for himself.

The rights, duties and liabilities of the husband and wife, as between themselves, and toward the public, remained in all respects unaffected by the husband's abandonment ; and as he might have resumed all his marital rights at pleasure, might have required her to follow him to any place where he could lawfully fix his home, and to reside with him there, so she might have insisted upon and obtained support from him to the extent of his ability and her necessities. At common law neither of them could have sued the other in a court of law, they could not have testified for or against each other, and rights in property owned by either at the time of the abandonment, or afterward acquired, remained precisely as before.

The marriage contract is the most solemn, and the marriage union the most complete, of any which exists among men. So perfect is this union that it is never severable at the will of either party, and so inviolable this contract that it can not be rescinded even by their mutual agreement. The dearest and highest interests of society are involved in the maintenance of this contract in all its integrity and force, and jeopardized by its violation. The maintenance of the wife by the husband, and, for that amongst other purposes, her ordinary residence

with him under the same roof, are an indispensable incident of the marriage relation.

The term "family," in popular acceptation includes parents, children and servants—all whose domicil or home is ordinarily in the same house and under the same management and head. Webster says the word signifies "the collective body of persons who live in one house and under one head or manager—a household, including parents, children and servants, and, as the case may be, lodgers or boarders." Webster's Dict., "Family." It is often difficult, within the compass of a definition, to give the full and exact meaning of a word in all its varied applications and connections, and it is obvious that the above definition of the word family does not express the exact meaning of the legislature in this statute. The intention of the legislature seems to have been to provide for the acquisition of a settlement by commorancy, where, and only where, the party during his residence in a town shall have supported himself and all persons legally dependent upon him for protection and support—ordinarily his wife, his minor children, unemancipated, and his servants; thus to test his fitness for admission to the privileges of an inhabitant by the exhibition of his ability and willingness to discharge that specific duty, and to make the acquisition of the privilege conditional upon the performance of the obligation.

Suppose a father occupies no house—is a mere boarder at a hotel, and that his wife is living at another hotel, and his minor daughter at a third, all in the same town. Could the father gain a settlement by six years' residence, by thus providing for his own support alone, while he left his wife and daughter to be supported by the town? The three are all one family, though they do not live together in one house. They are all *of* the father's family. The intention of the legislature we think was, by this term "family" to designate all individuals whom it was the right of the head of it to control, and his duty to support.

In this case the pauper was, within the meaning of the statute, part of her husband's family, and it was his duty to furnish her support. He acquired no rights and relieved

himself from no obligation by his abandonment of her; and having suffered her to be in want and to receive supplies from Cheshire, he gained no settlement in Burlington either for himself or her. The consideration which the law required of him as the price of the privilege of a settlement in Burlington he failed to pay, and lost the privilege by his neglect.

It can not be that the husband's abandonment of his wife discharged him from liability for her support, while at the same time he was acquiring a settlement for her as if she was living with and was supported by him; or that the wife could, either in her own right or through him, acquire a new settlement by commorancy in Burlington, while she was supported as a pauper by the town of Cheshire.

The decisions cited from the Massachusetts and Maine reports seem to have turned upon the peculiar phraseology of the statutes of those states respectively. The statute of Massachusetts provided that by a continued residence in any town for ten years, and paying all taxes assessed upon the party for five of those years, he gained a settlement in such town. And in the case of *Berkeley* v. *Taunton*, 19 Pick., 480, where the pauper had resided in Taunton and paid his taxes the full period required by law to give him a settlement under the statute, but during part of that time his wife had resided in and received supplies from another town without his request or knowledge, it was held that the continuity of his residence in Taunton was not interrupted by such aid furnished to his wife. The court said that, " had the support been furnished at his request, it might have presented a quite different question; " and that it was "immaterial whether the wife actually resided with him or not; in contemplation of law her domicil follows his." Here it will be observed that the statute of Massachusetts says nothing in relation to the party's supporting himself or his family, but makes the acquisition of a settlement to depend on residence and the payment of taxes only. And in the case of *Sudbury* v. *Stow*, 13 Mass., 464, Parker, C. J. says that " the payment of taxes within the town is the principal cause of the pauper's settlement." Under our statute the support of the party and his

family is the "principal cause" by which he gains a settlement.

The statute of Maine, under which *Raymond* v. *Harrison,* 11 Maine, 190, and cases there cited were decided, is in these words: "Sec. 6. A person of age having his home in a town five successive years, without receiving directly or indirectly supplies as a pauper, has his settlement therein." "Sec. 7. A person having his home in a town on March 21, 1821, without having received supplies as a pauper within one year before that date, acquired a settlement therein." In the case of *Green* v. *Buckfield,* 3 Greenl., 136, the court held that supplies furnished to children, who for nine years had been abandoned by their parents and entirely released from their care and control, were not received by the father as a pauper within the meaning of the statute. Mellen, C. J., said that "the statute was intended to introduce and establish new principles," that the supplies must be furnished to a man as a pauper, and that those only are his family who are under his care and protection, and then supplies furnished for them are for him. And in *Raymond* v. *Harrison,* (above referred to) which followed *Green* v. *Buckfield,* the same doctrine is advanced—that under this statute those only are part of a man's family who are under his care and control, and that to prevent the acquisition of a settlement the supplies must be furnished to him personally. But in neither of these cases was it decided that the supplies must be furnished for the *personal use* of the head of the family exclusively, but only that they must be for his use or the use of those who are under his care and control.

Our statute not only admits of, but requires, a different construction.

Between husbands and wives, as between parents and children and masters and servants, there exist certain rights and corresponding duties growing out of those relations, and so long as the husband is entitled to the control of the person and to the society and services of his wife, and in return is bound to render her protection and support, she must be considered a member of his family within the meaning of our

statute, whether she is actually residing with him under the same roof or not.

We think the town of Burlington is entitled to judgment.

In this opinion the other judges concurred; except HINMAN, C. J., who being an inhabitant of the town of Cheshire, did not sit.

————◄●►◄———

## SUPREME COURT OF ERRORS.

### HARTFORD COUNTY, FEBRUARY TERM, 1863.

Present,

HINMAN, C. J., SANFORD, BUTLER AND DUTTON, Js.