SIDNEY L. GEER *vs.* JOHN A. ROCKWELL ET AL.

Second Judicial District, Norwich, October Term, 1894.  ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Chapter 76 of the Public Acts of 1893 makes the "provisions of § 1216 of the General Statutes," relative to flowage petitions, "applicable in case any person desires to build a dam on his own land to create a pond or reservoir from which to take ice." *Held* that this could not be construed as applying to such a case the sections of the chapter covering flowage petitions which follow § 1216, and therefore that no petition could be maintained to obtain the right to flow land for an ice-pond; since without reference to such sections there was no rule for determining the mode of proceeding upon such a petition, or the relief which might be obtained thereby.

Whether circumstances might exist under which a law could be supported, which was designed to assist riparian proprietors to engage in the business of selling ice, by empowering them to create ice-ponds on the land of others, against their will, *quære*.

[Argued October 16th, 1894—decided January 2d, 1895.]

PETITION to flow lands of the defendants, brought to the Superior Court in New London County and tried to the court, *George W. Wheeler, J.*, upon the defendants' demurrer to the petition; demurrer sustained and judgment rendered for the defendants, and appeal by the plaintiff.    *No error.*

The petition was brought under General Statutes, § 1216, as extended by Chap. 76 of the Public Acts of 1893.    The object for which the plaintiff desired to flow the land was

alleged to be " to create a pond from which to take ice to place in an ice-house erected and to be maintained " on his own land; and it was averred that the flowage would be of public use.

*Solomon Lucas,* for the appellant (plaintiff).

I. The Act of 1893 provides that " all of the provisions of § 1216 of the General Statutes shall be applicable in case any person desires to build a dam on his own land to create a pond or reservoir from which to take ice."

The section above referred to is the first section of what is known as the flowage law, Gen. Stat., Chap. 84, p. 283, which has been declared by this court, in two well considered cases, to be constitutional and valid and not contrary to natural right. *Todd* v. *Austin,* 34 Conn., 78; *Olmstead* v. *Camp,* 33 id., 532. It is claimed, however, by the defendants that the Act of 1893 is so entirely different from the flowage law, that the two decisions above referred to ought not to be considered as authority in this case. The claim is that it is different in its purpose and in its mode of procedure; or rather that it contains no mode of procedure; that it simply enables a person to bring a petition; that no provision is made to compensate those in whose lands easements are to be acquired; that the Act of 1893, rightly construed, has no relation to the flowage law, but that it stands wholly by itself. In other words, that it is an Act simply containing the provisions of § 1216 of the General Statutes, and no other part of chapter 84 has any relation to it, and was not intended by the legislature to refer to it.

It is confidently submitted that that construction of the statute defeats the manifest intention of the legislature. The legislature in the passage of the Act of 1893, could never have intended simply to enable a person to bring a petition to the Superior Court, and when it reached that court, nothing could be done with it but to withdraw it; or if anything was done, it was to be proceeded with in the dark, and not in the same way as other petitions brought

under the same section referred to in the Act of 1893, namely, § 1216 of the General Statutes; or that no compensation was intended to be provided for, in the acquirement of such easement. Any other construction put upon the Act of 1893, than that it was intended by the legislature as an addition to the flowage law, renders the action of the legislature ridiculously absurd.

The Act of 1893 should be construed as a part of the flowage law, by reason of its addition to it; because that construction provides a remedy to obtain the object sought, and such a construction should be given to it as will uphold it, and not one that will render it senseless and invalid. A statute should be construed to cover the whole ground intended by the legislature when it can be done without doing absolute violence to the language used. *Sturges* v. *Raymond*, 27 Conn., 476; *Richards* v. *Eno*, 23 id., 415; *Wolcott* v. *Pond*, 19 id., 604. The construction desired by the plaintiff should be given, even if it should require the court to go beyond the meaning of the literal terms of the statute. *Bishop* v. *Vose*, 27 Conn., 9; *Sage* v. *Hawley*, 16 id., 117. Such construction will be put on a statute, which will best answer the intention that the makers had in view; hence in some cases the letter of the statute in order to effect its object is restrained, in others it is enlarged, and in still others is contrary to the letter. *Bridgeport* v *Hubbell*, 5 Conn., 243; *United States* v. *Noyes*, 4 id., 343. The safe and wholesome rule in construing a statute is, that when an act of the legislature admits of two constructions, the one valid and the other invalid, courts should adopt the former and uphold the statute if it may be done by any reasonable interpretation, though it be not the most obvious. *Town of Wilton* v. *Town of Weston*, 48 Conn., 338, and authorities cited by the court. It is no part of the duty of a court to be astute in order to invalidate a statute. It will rather strive to so interpret it as to sustain its validity and give effect to the intention of the lawmaking power. *Ferguson* v. *Borough of Stamford*, 60 Conn., 447. It is a rule of very frequent application that courts will be astute in giving construction to a statute which

will save it from invalidity.  *Camp* v. *Rogers*, 44 Conn., 298, and authorities cited by the court.

II. The Act of 1893 is not unconstitutional as contrary to natural right.  *Todd* v. *Austin*, 34 Conn., 78; *Olmstead* v. *Camp*, 33 id., 532; *Hartford Manilla Co.* v. *Olcott*, 52 id., 475.

Unless it very clearly appears on the face of the petition, that the proposed taking will not be of public use, (and that cannot be when the complaint contains the prescribed allegation that it will be of public use,) it is the duty of the court to allow the parties to be heard in that regard, in the manner prescribed by the legislature, and have the question properly determined as a question of fact.

*Gardiner Greene, Jr.*, and *W. A. Briscoe*, for the appellees (defendants).

I. The taking of private property by virtue of legislative enactment for other than public use is contrary to natural right, and to the Constitution of Connecticut and of the United States.  Amendments to U. S. Constitution, article 5; Constitution of Connecticut, article 1, § 11; *In re Albany Street*, 11 Wendell, 149, 151; Cooley, Const. Limitations (4th Ed.), 661; *Coster* v. *Tide Water Co.*, 18 N. J. Eq., 54; *Bradley* v. *N. Y. & N. H. R. R.*, 21 Conn., 294, 305, 306; *Buffalo & N. Y. R. R. Co.* v. *Brainerd*, 5 Selden, 108; *Taylor* v. *Porter*, 4 Hill, 146; 3 Kent's Comm., Part 5, § 34; *Varrick* v. *Smith*, 5 Paige, Ch., 137; Am. & Eng. Ency. of Law, Vol. 6, p. 515, § 2 and note 3.

II. The creation of an ice-pond is not a public use recognized by our law.  "Public use may therefore well mean public usefulness, utility, or advantage, or what is productive of general benefit; so that any appropriating of private property by the State under its right of eminent domain for purposes of great advantage to the community is a taking for public use."  *Olmstead* v. *Camp*, 33 Conn., 532, 546.

Cemeteries, ways, gas companies, water companies, wharf companies, canal companies, railroad companies, mills, high-

ways, parks, telegraphs, drains and sewers, logging booms and irrigation, have been held of public use. Taking land for mill flowage has been held in Georgia, New York, Alabama, Vermont and Michigan, not to be a taking for a public use. *Sadler* v. *Langham*, 34 Ala., 311; *Loughbridge* v. *Harris*, 42 Ga., 500; *Hay* v. *Cohoes Co.*, 3 Barb., 47.

In this State the Flowage Act is sustained as the long settled law of the State. It was enacted at a time when natural water power was the only practicable means of supplying power to large mills. The more recent availability of steam and electricity did not then exist, and if the constitutionality of the Act could now be considered *de novo*, it might have a different decision. *Farist Steel Co.* v. *Bridgeport*, 60 Conn., 292. The fact that the public may derive some benefit from the sale of ice from the proposed pond is not material. The plaintiff would not be obliged to sell ice, and it does not appear that he desires to.

III. The statute in question provides no compensation for the owners of the land to be taken. Even for public uses, private property cannot be taken without "just compensation." Constitution of Connecticut, article 1, § 11.

If the General Assembly attempts by statute to take private property for an inadequate indemnity, the statute is to that extent ineffectual. *Enfield Bridge Co.* v. *Conn. River Co.*, 7 Conn., 49; *Palairet's Appeal*, 67 Pa. St., 479; 5 Am. Rep., 450; *Gardner* v. *Newburgh*, 2 Johns. Ch., 161; *Vanhorne* v. *Dorrance*, 2 U. S., 340, 312. Much more when the statute provides for no compensation. When the legislature authorizes the taking of private property for public use, it must provide for ascertaining and paying compensation. Lewis on Eminent Domain, § 252.

IV. Section 1216 of the General Statutes provides for the bringing of a suit when one man desires to have a dam on his own land, whereby, for the use of a water mill on his own land, to flow water upon land of another person; but makes no provision either for any ascertainment or payment of damages, or for any ascertainment that the flowage will be of public use.

It will not do to say that the subsequent sections of the chapter of the General Statutes, which § 1216 begins, provide for ascertainment and payment of compensation. The *chapter* is not referred to, but a particular section of it. The statute must be strictly construed against the plaintiff.

"The statute under which this proceeding is had, authorizing, as it does, the taking away from another of all beneficial use of his property * * * ought to be strictly construed in favor of the owner of the land, and against the parties seeking to take it." *Occum Co.* v. *Sprague Mfg. Co.*, 35 Conn., 496, 510; *Nichols* v. *Bridgeport*, 23 id., 208.

The statute in question is not an amendment of the Flowage Act. The plaintiff claimed in the Superior Court that Chap. 76 of the Public Acts of 1893, should be considered as an amendment to Chap. 84 of the General Statutes, and therefore be read in connection with everything in that chapter. But the General Statutes deal only with mill flowage, and the Act of 1893 only with ice-ponds. The subjects are distinct, and the latter is an independent statute, referring expressly to one particular section, and to nothing more. *Expressio unius, exclusio alterius.* As this Act must be strictly construed against the plaintiff, no provisions for ascertaining damages, or the public nature of the use, can be supplied by construction. It would be contrary to public policy for the court to be astute to discover some way to uphold a statute void in its letter, and intended to infringe property rights, and by upholding it to encourage the most obnoxious kind of private legislation.

BALDWIN, J. Section 1216 of the General Statutes provides that if any one owning or desiring to set up a water mill, desires to build or raise a dam on his land, to create or improve the water power for the mill, which dam will raise the water so that it flows back upon the land of another; and cannot agree with the latter as to the damages to be paid to him therefor; he may bring his petition against him to the Superior Court, describing the proposed dam and the land to be overflowed, so that the record will show with cer-

tainty the matter that shall be determined. Subsequent sections, nine in number, provide as to the action to be taken on such petitions. In 1893, it was enacted that "all the provisions of section 1216 of the General Statutes shall be applicable in case any person desires to build a dam on his own land to create a pond or reservoir from which to take ice." Public Acts of 1893, p. 245, Chap. 76.

The defendant has demurred to the plaintiff's claim for relief, which is for "such relief and action from the court as is provided by the statute laws of this State relating to flowage petitions."

The Act of 1893, upon which the complaint is based, provides for bringing a petition of this character to the Superior Court, but it goes no further. One, and only one, out of the ten sections constituting chapter 84 of the General Statutes concerning flowage petitions, is made applicable to proceedings for the creation of an ice-pond. The remaining sections establish a peculiar mode of procedure upon petitions to create a mill-pond. There is to be a hearing before a committee as to the question of public use, the conditions of flowage, and the damages that will be occasioned by it. The court may reverse their conclusion as to a public use, and must add fifty per cent to such damages as they assess. A jury also may be called in to re-assess the damages, and the amount finally determined is to be paid or deposited with a public officer in a certain manner, whereupon the right of building and maintaining the proposed dam is to be vested in the petitioner and his heirs and assigns. If after a failure to make such payment or deposit, a new petition is brought for a similar purpose, the expenses incurred in defending against the former proceeding must be paid, before the petitioner can again be heard.

If the procedure upon flowage petitions had been such only as is usual in any ordinary action, the grant of jurisdiction to the court over petitions to create an ice-pond might fairly have been construed as implying the right to proceed upon them to final judgment. But as the matter is one of a peculiar and statutory character, and the legislature, instead

of making the whole of chapter 84 applicable to the case, has seen fit to limit its action to a single section, we should be rather making than declaring law, were we to hold that any or all of the other sections might be resorted to, in order to determine what action the court might take, and what relief it might award. Under an ordinary flowage petition the plaintiff acquires a perpetual right to build and maintain a dam, but this does not constitute him the proprietor of the ice which may be formed upon the pond. On the contrary, such ice belongs to the proprietor of the lands overflowed, subject only to the right of the mill owner to have it left to melt where it is, if this be necessary to maintain a proper supply of water for his mill. *Howe* v. *Andrews*, 62 Conn., 398, 400. Even, therefore, if we could fairly construe the statute as sufficient to secure the right to build and maintain the dam, it would still be of no avail to the plaintiff, unless we should go further and hold that this right included by implication the ownership of the ice produced—an ownership which the existing flowage law does not give.

Statutes authorizing the taking or flowage of land by com pulsory process should be construed strictly, and whoever claims under them is confined to a clear and plain exercise of such powers as are expressly granted. *Edwards* v. *Stonington Cemetery Association*, 20 Conn., 466, 476 ; *Occum Co.* v. *Sprague Manufacturing Co.*, 35 id., 496, 510. An express grant for such a purpose carries, no doubt, whatever is plainly and necessarily incident to it; but it is not plain in the present instance how much, if any, of what follows § 1216 can be treated as applicable to proceedings to create an ice-pond. The express mention of one section would naturally seem to import an intention to exclude the others. *Expressio unius exclusio est alterius.* The intention of a legislature can only be gathered from the language it has employed. *Lee Brothers Furniture Co.* v. *Cram*, 63 Conn., 433, 438. The statute does not purport to be an amendment of § 1216. It enlarges its applicability, but not its terms. The application of the subsequent sections, therefore, is not necessarily enlarged; and as without such an enlargement, and, indeed,

without an extension as respects the right to be secured, which is far beyond their original scope, they can afford no aid to the plaintiff, the statute ,is insufficient to enable him to secure the right of flowage which he seeks, and the demurrer was properly sustained.

Other causes of demurrer were urged at the bar, respecting the form of the complaint, and the validity of the statute; but the conclusion to which we have come relieves us from the necessity.of expressing an opinion as to whether it is possible that circumstances might now exist, or hereafter arise, which would justify the State in assisting a riparian proprietor to engage in the business of selling ice, by empowering him to create an ice-pond on the land of others, against their will.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.