## Rena Young *vs.* Samuel Roodner.

Maltbie, C. J., Hinman, Banks, Avery and Brown, Js.

Argued April 8th—decided June 2, 1937.

*Jeremiah D. Shea,* with whom was *John Clark Fitz-Gerald,* and, on the brief, *David E. FitzGerald* and *David E. FitzGerald, Jr.,* for the appellant (defendant).

*Leo Nevas,* with whom, on the brief, was *Bernard A. Nevas,* for the appellee (plaintiff).

BROWN, J. The plaintiff brought this action to recover for injuries suffered from a fall down a stairway in the defendant's building, leading from a store to the cellar below, while the plaintiff was lessee of these premises. The fall was caused by a shock from a defective electric light switch which the defendant had failed to repair, as agreed prior to the commencement of the plaintiff's tenancy. In so far as the appeal from the refusal to set aside the verdict is concerned, the jury could reasonably have found the following facts: The defendant owned the building in Norwalk of which this store and basement known as number 59 North Main Street was a part. Near the rear of the store, which was on the ground floor, a stairway with eleven steps led to a dark cellar below, where the furnace operated by the plaintiff to heat the store was situated. The electric light in the cellar was controlled by a switch located under the store floor to the right of one descending the stairs. It was attached on the bottom of a floor joist seven inches back from the edge of the floor beam at the stairway opening. Six inches below this beam and running parallel with it, but an inch nearer the stairway, was a one and three-quarters inch water pipe.

The switch was a rotary snap switch with a circular

porcelain base about two inches in diameter, surmounted by a metal cap or cover, on the middle of the top of which was a round turn-button for use in operating the switch. This cover was insulated from the metal operating parts enclosed thereunder, by a fiber lining or shell fitted inside it, and the turn-button was made of substance which was a non-conductor of electricity. The axis or pivot on which the movable metal center part of the switch turned and to which it was so annexed that it could not come off, was securely fastened through the porcelain base. The stem of this movable member was threaded, and the turn-button screwed down onto it. As threaded, a total of four or five full turns clockwise was required to seat the button firmly on the stem, which then served to hold the cover in place against the porcelain base. To operate the switch, a further turn clockwise was necessary which would rotate the center member. This was in the nature of a cross-bar so arranged that when the switch was on, its ends contacted two metal parts set opposite each other near the outer rim of the base and connected respectively with the two wires leading to the switch; and when the switch was off, these ends were out of contact in a position between these fixed contact points. The switch was so designed, that either when turned on, or by a further clockwise movement, turned off, a spring snapped the center member into its new position, avoiding the arcing of current likely to be incident to a slower motion. The only manner in which the switch cover and fiber lining could be removed, was by first taking off the turn-button. This involved turning it counter clockwise until it was unscrewed from the stem.

The defendant leased the store and basement to the plaintiff for the term of three months from December 1st, 1934, and she took possession shortly before that

date. A few days earlier, when the plaintiff and her son-in-law Hunt had gone with the defendant to look at the premises, incidental to leasing them, Hunt noticed that the switch did not click when he turned the button, but that the button could be turned easily and apparently did not make proper contact. At that time and until the plaintiff's accident, the switch was defective in that the button would revolve easily in either direction, and the spring was weak so that it did not click when turned and did not make a proper snap contact, so that at times the light would not stay lit, necessitating further turning of the button until the contact essential to the lighting of the light was accomplished, and the entire mechanism of the switch was loose and lacking in stability. Hunt mentioned to the defendant that the switch was defective and as a part of the consideration for the plaintiff's taking the lease he agreed to fix it. Although subsequently requested several times to attend to it, he failed to do so.

On February 11th, 1935, in going to the cellar the plaintiff as she stood on the stairs grasped the water pipe with her right hand and reached for the switch with her left. The turn-button was missing and her hand contacted the exposed metal parts of the switch, resulting in the shock which caused her to fall down the stairs and sustain the injuries complained of. Until the night before, the button, cover, and fiber lining had been in place on the switch as at the time when the lease was made, but shortly after the accident Hunt found these on the cellar bottom and stairway. The plaintiff in attempting to turn on the switch as she did was in the exercise of due care.

Upon the evidence, the only conclusion which the jury could reasonably reach as to the cause of the plaintiff's shock, was that it was due to the lack of the

protecting metal cap with its fiber lining which left the live parts of the switch exposed to the plaintiff's touch. Although this constituted a serious defect in the switch, it was not one which existed when the premises were leased, nor had it come into existence until a few hours at the most before the accident. There was no evidence affording even a reasonable basis for an inference by the jury as to the cause of the cap coming off. Lacking such evidence they could not reasonably conclude that the failure of the defendant to repair the switch was the cause of the plaintiff's injury. The trial court was in error in refusing to set the verdict aside.

Since our conclusion that the court erred in denying the motion to set aside the verdict as against the evidence necessitates a new trial, we discuss the further rulings assigned as error, in so far as they may be of consequence therein. The court correctly overruled the defendant's contention that the plaintiff had no right of action on the ground that by filing a petition in bankruptcy shortly after her injuries were received, followed by an adjudication of bankruptcy thereon, it had passed by operation of law to her trustee in bankruptcy as a part of her bankrupt estate. Section 70A of the Bankruptcy Act specifically recites the property of the bankrupt, title to which shall vest in the trustee upon his appointment and qualification. The effect of this enumeration of certain classes of property is to limit the act's application to such only within the larger field of property in general. *Board of Trade of City of Chicago* v. *Weston,* 243 Fed. 332, 335. The defendant's claim is that the right of action here falls within Subsection 5 thereof, which reads: "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against

him," by virtue of our decision in *Siller* v. *Siller*, 112 Conn. 145, 151, 151 Atl. 524, that a cause of action for personal injury is a "property interest." The scope of Subsection 5, however, is limited by Subsection 6. "Subsection 5 and Subsection 6 . . . must be read together and Congress evidently intended that rights of action should be dealt with in subsection 6 which provides that only rights of action arising upon contract or from unlawful taking or detention of or injury to [his] property shall pass to the trustee. Under the rule of construction of statutes, other rights of action are excluded and would not pass." *Ruebush* v. *Funk*, 63 Fed. (2d) 170, 172. See also *Cleland* v. *Anderson*, 66 Neb. 252, 277, 92 N. W. 306; Gilbert's Collier on Bankruptcy (4th Ed.) p. 1238, § 1516; 6 Amer. Jur. p. 611, § 170. The authorities are in accord that such a cause of action is not within the terms of Subsection 5 of the act. *Sibley* v. *Nason*, 196 Mass. 125, 130, 81 N. E. 887, 12 L. R. A. (N. S.) 1173, 1175, and note; *In re Haensell*, 91 Fed. 355, 356; 3 R. C. L. p. 218, § 53. The court did not err therefore in refusing to rule that the plaintiff's right of action had passed to her trustee in bankruptcy.

Our determination already stated, that there was no evidence sufficient to support the conclusion that the defendant's failure to repair the switch as promised, was the proximate cause of the shock to the plaintiff, renders unnecessary a discussion of the claimed correction of the finding bearing upon this issue, and of the court's charge as to the nature of the defect of the switch essential to the establishment of the plaintiff's cause of action.

There is error and a new trial is ordered.

In this opinion the other judges concurred.