THE NEPTUNE PARK ASSOCIATION ET AL. *v.* BEATRICE STEINBERG ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued October 4—decided November 20, 1951

*Francis F. McGuire,* with whom were *Morgan K. McGuire,* and, on the brief, *Joseph E. Moukawsher,* for the appellants (plaintiffs).

*Irving S. Ribicoff,* with whom were *Frank A. Kelly, Jr.,* and, on the brief, *Morris Lubchansky,* for the appellees (defendants).

INGLIS, J. The question involved in this appeal is whether the use being made of the defendants' real estate is violative either of a restrictive covenant contained in their deed or of the zoning regulations applying to the area in which their property is located.

The following facts were properly found by the trial court: The defendants are owners as tenants in common of a building lot, with a fourteen-room house thereon, at 33 Mott Avenue in New London. The lot is within a real estate development laid out in 1907. The portion of the development in which the lot is situated is known as Neptune Park. The development was designed for residential purposes in accordance with a general plan, and all the building lots therein were made subject to certain restrictions. Among the restrictions to which the property now owned by the defendants was made, and now is, subject are these: "There shall not be erected upon the premises herein conveyed any building or structure other than a dwelling house . . . ; no public hotel, public bathing house or club house, shop, store, saloon or other place of

business shall be erected or maintained on the lot herein conveyed." The zoning regulations of New London place the lot in zone A-1. They state that one of the purposes of their adoption was that "of preventing the overcrowding of land and avoiding undue concentration of population." New London Bldg. Zone Ordinance, § 2. They provide: "In an 'A' Residence Zone [including A-1 zones] no dwelling shall be erected, altered or used except as a one-family detached dwelling." Id. § 3. " 'A one-family detached dwelling' is a house accommodating but a single family. . . ." Id. § 1 (v). "A 'family' as used in this ordinance shall be deemed any number of individuals living and cooking together as a single housekeeping unit." Id. § 1 (u).

The named plaintiff is a specially chartered corporation with power to enforce the restrictive covenants and zoning regulations which obtain in the area where the defendants' property is located. The two other plaintiffs own real estate in the immediate neighborhood. The defendants are four sisters, each of whom is married. Among them they have eight children. They all live in Springfield, Massachusetts, and there each sister and her family occupy a dwelling separate from the others. They and their families, however, have been accustomed to spend their summer vacations together as one family.

The house now owned by the defendants was erected in 1914 and has ever since been occupied as a dwelling house. It was acquired by the defendants in September, 1948, and they started to occupy it in June, 1949. While they were in occupancy, the custom was for the defendants Jacobson and Steinberg and their husbands and the husbands of the other two defendants to spend weekends there, while the defendants Greenberg and Cheffeitz and all eight children were there continuously. Mrs. Cheffeitz, owing to poor

health, was not active in the management of the household. That duty devolved upon Mrs. Greenberg, who planned and prepared the meals, did most of the housework and for the most part acted as head of the household. The defendants made no structural changes in the house. In particular, it was not altered to make separate quarters for any members of the group. At the suggestion of the postman, name plates were put up on the outside of the door designating the names of each of the defendants, but there is only one mail slot and one doorbell. Within the house there is only one kitchen, one sink, and one stove, and only one icebox is in use for the whole group. The defendants and members of their families live and cook together as a single housekeeping unit. They do not occupy separate quarters within the house, and the lodging, cooking and eating facilities are common to all. No business is carried on in the premises. It is not used as a boarding or lodging house. The trial court concluded that the use made of the premises by the defendants does not violate either the restrictive covenant or the zoning regulations and rendered judgment for the defendants.

The contention of the plaintiffs with reference to the restrictive covenant is that it is to be construed as permitting the erection of only one single-family dwelling house on the lot and it, therefore, precludes the use of the dwelling house which is erected thereon by four families. On the question whether the words "a dwelling house" in such a covenant are to be interpreted as meaning a single-family house as distinguished from a duplex or apartment house, there is a sharp conflict in the authorities. Note, 14 A. L. R. 2d 1376, 1381. It is not a question, however, the determination of which is essential to a decision of this case. The house now standing on the defendants' property is in structure and design a single-family dwelling.

"Restrictive covenants, being in derogation of the common-law right to use land for all lawful purposes, are to be narrowly construed and are not to be extended by implication. If their language is of doubtful meaning, it will be construed against rather than in favor of the covenant." *Rossini* v. *Freeman,* 136 Conn. 321, 323, 71 A. 2d 98; *Hooker* v. *Alexander,* 129 Conn. 433, 436, 29 A. 2d 308. The covenant providing that no structure except a dwelling house shall be erected on the premises is clearly directed at the form and design of the permitted structure. That particular covenant is not concerned with the use to which the structure is to be put after it is erected. If it had been intended to control the use of the structure, it could easily have so stated. It could at least have provided that any structure on the premises should be maintained as a dwelling house, as was true of the covenant before the court in *Hooker* v. *Alexander,* supra, the case relied upon by the plaintiffs. Also see *Baker* v. *Lunde,* 96 Conn. 530, 540, 114 A. 673. That it was the intent of the parties to make this covenant apply only to the nature of the structure to be erected on the land and not to limit the use of it to occupancy by a single family is made abundantly clear by the fact that there is another covenant in the deed which does control the use of the property. We refer to the covenant that "no public hotel, public bathing house or club house, shop, store, saloon or other place of business shall be erected or maintained on the lot herein conveyed." This covenant does prohibit maintenance of the structures named as well as their erection. It prohibits uses which might otherwise be made of buildings which structurally were in the form of dwelling houses. If it had been the intent of the parties to prohibit the use of any dwelling house erected within the development by more than one family, they would naturally have so

specified in this covenant in connection with the prohibition of hotels.

In Webster's New International Dictionary (2d Ed.) a dwelling house is defined as "A house, or sometimes part of a house, occupied as a residence, in distinction from a store, office, or other building." The words "a dwelling house" in the covenant in question refer to a building erected in such a form that it is designed to be occupied as a dwelling as distinguished from a place of business. The structure erected on the defendants' property is no more than that. It is not violative of the restrictive covenant.

As regards the effect of the New London building zone ordinance, the claim of the plaintiffs is that it restricts the use of the defendants' property to a one-family dwelling; that a family is a group of persons living together as a unit with one head and that, therefore, the defendants are violating the ordinance in that their property is occupied by four separate families. The weakness of that argument lies in the definition of family which it adopts. It is true that "The word 'family' is one of elastic meaning and is used in a great variety of significations." *Piccinim* v. *Connecticut Light & Power Co.*, 93 Conn. 423, 425, 106 A. 330; see *Hall* v. *Meriden Trust & Safe Deposit Co.*, 103 Conn. 226, 236, 130 A. 157; *Hart* v. *Goldsmith*, 51 Conn. 479, 480; *Cheshire* v. *Burlington*, 31 Conn. 326, 329. The zoning ordinance involved in this case, however, defines the word "family" as it is used therein. When any piece of legislation defines the terms as they are used in it, such definition is exclusive of all others. *Young* v. *Roodner*, 123 Conn. 68, 72, 192 A. 710; *Lenox Realty Co.* v. *Hackett*, 122 Conn. 143, 150, 187 A. 895; *Geer* v. *Rockwell*, 65 Conn. 316, 323, 32 A. 924; *Linsley* v. *Brown*, 13 Conn. 192, 195; *Fox* v. *Standard Oil Co.*,

294 U. S. 87, 95, 55 S. Ct. 333, 79 L. Ed. 780; 50 Am. Jur. 254, § 262.

The definition of "family" stated in the ordinance is "any number of individuals living and cooking together as a single housekeeping unit." The test, therefore, of whether any house is being used as a single-family dwelling house is whether it is being occupied by only one housekeeping unit, not whether it is being occupied by one family unit as that term might be otherwise defined. To set up such a test is not at variance with the stated general purpose of the ordinance to prevent overcrowding. The housekeeping unit test is as good as any other to accomplish that purpose.

It is clear from the finding that the occupancy of the defendants' house is by a single housekeeping unit. Accordingly, under the zoning ordinance the house is being used as a single-family dwelling and such use is not in violation of the ordinance.

There is no error.

In this opinion the other judges concurred.