89 N.J. Super. 543 (1965)
215 A.2d 593
TOWNSHIP OF BERLIN, PLAINTIFF,
v.
CHRIS CHRISTIANSEN, DEFENDANT.
Superior Court of New Jersey, Camden County Court, Law Division.
Decided December 10, 1965.
*544 Mr. Richard P. Console for plaintiff (Mr. Joseph A. Maressa, attorney).
Mr. Michael D. Varbalow for defendant (Mr. Michael N. Kouvatas, attorney).
PASCOE, J.C.C.
This is an appeal from a decision of the Municipal Court for the Township of Berlin, wherein the defendant was found guilty of violating section 3(a) of the township zoning ordinance. The case proceeded de novo on a stipulation of fact. R.R. 3:10-10.
The pertinent part of the ordinance is as follows:

"Section 3. Residential A. Districts.
In Residential A. Districts, no building or other structure shall be used and no building or other structure shall be built, altered or erected to be used or designed for use for any purpose other than that of the following:
(a) A single family dwelling. * * *"
*545 It was stipulated that defendant Christiansen and his wife were owners as tenants by the entirety of a split level dwelling house located at 321 Cleveland Avenue in the Township of Berlin in a Residential A district.
The physical layout of the dwelling house is as follows: on the lowest level there is a recreation room and a bedroom, together with an entrance to the back yard; several steps from the recreation room lead to the middle level which consists of a living room, kitchen and dinette, and has an entrance opening on the front of the dwelling house; the upper level consists of three bedrooms and is directly above the lowest level.
In the early summer of 1965 defendant's wife separated herself from him and together with their children is residing in another municipality. On July 5, 1965, subsequent thereto, one Robert Cornwell, a friend of defendant, moved into the dwelling with Mrs. Cornwell and their three children. The Cornwell family used the three bedrooms on the upper level and defendant slept in the bedroom on the lowest level. There were no other cooking or dining facilities in the dwelling other than the kitchen and dinette located on the middle level. Defendant entered either the front door or the back entrance, depending on which was more convenient. The Cornwell children used the back entrance on the lowest level whenever they played in the back yard. The Cornwells were in the dwelling house as tenants on a month-to-month lease which was terminated on October 15, 1965. No physical changes were erected inside the house as a result of the occupancy of the Cornwells. The monthly rental paid by the Cornwells was $115.
The zoning ordinance in question would limit the use of defendant's property to a "single family dwelling" and to six other uses which are not relevant in this action. The township contends that defendant's house has been divided into two apartments and as such violated its zoning ordinance. Defendant contends that occupancy of the house by the Cornwell *546 family and himself does not violate the "single family dwelling" use.
Research of the question has divulged no New Jersey case directly on point. There are, however, cases from other jurisdictions that are apposite.
In Carroll v. Arlington County, 186 Va. 575, 44 S.E.2d 6, 172 A.L.R. 1169 (Sup. Ct. App. 1947), defendant was convicted of violating a zoning ordinance by permitting two families to be housed in a building located in an area zoned as a single-family residential district. Defendant was an unmarried woman who allowed a man, his wife and three children to occupy her basement. The wife worked for defendant but the husband did not. The family did pay some rent. The court reversed the conviction, holding that the ordinance did not in terms prohibit the use of a single dwelling by more than one family, and that one person could not constitute a family.
In Missionaries of Our Lady of LaSalette v. Village of Whitefish Bay, 267 Wis. 609, 66 N.W.2d 627 (Sup. Ct. 1954), a group of priests and lay brothers were held to be living together in a single housekeeping unit and to constitute a family within a zoning ordinance restricting the use of buildings in that district to single-family dwellings. The ordinance specifically defined "family" as follows:
"A family is one or more individuals living, sleeping, cooking or eating on premises as a single housekeeping unit."
There was one kitchen in the building. The court pointed out that restrictions contained in a zoning ordinance must be strictly construed. It also declared that it was neither the legislative intent nor the common acceptation of the term "family" that it be restricted to a group bound by ties of relationship.
Likewise, Driscoll v. Brunner, 64 N.Y.S.2d 161 (Sup. Ct. 1945), held that occupation of a residence by owners with various blood relatives does not violate a one-family dwelling limitation in a zoning ordinance.
*547 In Neptune Park Ass'n v. Steinberg, 138 Conn. 357 (Sup. Ct. Err. 1951), a zoning ordinance prohibited the use of any dwelling except as a one-family dwelling and defined a family as any number of individuals living and cooking together as a single housekeeping unit. A 14-room house was occupied by four families, two of them continuously and two of them only during the summer. They did not occupy separate quarters and their lodging, cooking and eating facilities were common to all. The court held there was no violation of the ordinance.
Counsel herein have cited two additional cases on this question. Southampton Civic Club v. Couch, 159 Tex. 464, 322 S.W.2d 516 (Sup. Ct. 1959), held that the renting of a room or rooms in a private residence which is merely incidental to its use as a family residence does not violate a restrictive covenant limiting the use of the property to a single-family residence.
The case of Brady v. Superior Court in and for San Mateo, 200 Cal. App.2d 69, 19 Cal. Rptr. 242 (D. Ct. App. 1962), undertakes the most extensive review of cases construing the term "single-family dwelling." The court there held that the term does not embrace rentals of separate rooms, but rather designates the joint occupancy and use of the dwelling by all of those who live there.
"The word `single' precludes the segregation of certain portions or rooms for rental. It forecloses multiple occupancy of certain portions of the unit for rental as segregated part, or parts, of the unit. `Dwelling' means the whole of the premises used for living purposes. It must include the use of the common rooms, such as kitchen, dining room, living room, if any, by all occupants. It refers to, and reinforces, the concept of singular use, as opposed to multiple. The `dwelling' cannot be fragmentized into broken bits of housing for rental return. `Family' signifies living as a family; it inhibits the breaking up of the premises into segregated units. It does not necessarily compel the use of the unit by more than one person. We cannot conceive that [the town of] Atherton meant to prohibit the occupancy of the unit by a single individual homeowner. The word must then, instead, refer to the use of the premises as a family, or in the manner of a family. Such family use, again, would, and must be, a single and common use of the premises."
*548 Applying these cases to the facts at hand I find that the Carroll case above is distinguishable. In that case one of the lessees was actually employed by the owner. Here there is no such relationship. Also, this case is unlike the unique circumstances presented in the Missionaries case involving a religious community. Nor were the Cornwells blood relatives of defendant, as in the Driscoll case.
The Neptune Park case is also distinguishable because that ordinance specifically defined the term "family," whereas in this case the term is undefined.
The test advanced in the Southampton case seems to be the most intelligent approach to the construction of the term "single-family residence." The use is proper if the family use is the principal use and the rental use is merely incidental. I determine that the rental use herein outweighed the family use, not only because the Cornwells were more numerous but also because they occupied a greater proportion of the dwelling. More decisively, the payment of a fair market rent and the normal landlord-tenant relationship caused the use to be principally a rental use and only incidentally an everyday family use. In addition, it is stipulated that the Cornwells were not blood relatives but only friends.
The Brady case also accords with this view in that it holds that the term "single-family dwelling" does not embrace rentals of separate rooms. I find that where an actual landlord-tenant relationship exists, based on the payment of a fair market rental rather than a nominal rental, this relationship weighs heavily in negating a single-family use.
Zoning ordinances are to receive reasonable construction and application and are to be liberally construed in favor of the municipality. Place v. Board of Adjustment of Borough of Saddle River, 42 N.J. 324 (1964).
Also keeping in mind the purposes of zoning ordinances which are, ostensibly, to prevent overcrowding, depreciation of property values, fire hazards, etc., all of which are legitimate statutory purposes (see N.J.S.A. 40:55-32), I find that the particular use herein violated the ordinance and accordingly find defendant guilty.