[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Street Retail, Inc., brought this action against the defendant, Barbara Wilson, d/b/a Sedgwick Deli-Mart,[1] to recover monetary damages, attorney's fees and court costs arising out of the defendant's alleged failure to pay common area maintenance ("CAM") charges and real estate taxes under a lease of commercial space at 13 Sedgwick Road in West Hartford, Connecticut. The defendant filed a special defense alleging that the lease between the parties is invalid because the original lease agreement, to which both parties are successors in interest, was not signed by the lessor and two witnesses. The defendant also filed two counterclaims, or claims for offset.[2]
The first alleges that the plaintiff breached the provision of the lease that prohibits the plaintiff from renting space in the shopping center to another tenant for use as a convenience store or grocery store. The second alleges that the defendant is entitled to attorney's fees due to her success in defending against the plaintiff's earlier summary process actions.
Additionally, during trial the defendant raised the claim that the plaintiff lacks standing to maintain this action.
 I
CT Page 8474 STANDING
"The question of standing implicates a court's subject matter jurisdiction and, as such, may be raised at any time during the proceedings." Weidenbacher v. Duclos, 234 Conn. 51, 54 n. 4, 661 A.2d 988
(1995); In re Michelle G., 52 Conn. App. 187, 190, 727 A.2d 226 (1999). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.)Tomlinson v. Board of Education, 226 Conn. 704, 717, 629 A.2d 333
(1993); see Crone v. Gill, 250 Conn. 476, 479, 736 A.2d 131 (1999).
The defendant claims that the plaintiff lacks standing because it is not clear that the plaintiff is the landlord/owner of the premises. The defendant claims confusion because written communications regarding the leased premises and the CAM and tax obligations refer to and/or bear the letterhead and name of a different entity, Federal Realty Investment Trust. There is evidence that the plaintiff is the owner and landlord of the premises and is a wholly owned subsidiary of Federal Realty Investment Trust. The defendant's argument goes to the merits of the case, that is, to whether the plaintiff should prevail, rather than whether the court has jurisdiction. See Ninth RMA Partners, L.P. v.Krass, 57 Conn. App. 1, 746 A.2d 826 (2000). There is no merit to the claim that the plaintiff lacks standing.
 II THE COMPLAINT
The plaintiff is seeking recovery of unpaid real estate taxes and common area maintenance charges under a lease agreement to which they are both successors in interest. The plaintiff also seeks attorney's fees and court costs. Many of the material allegations of the complaint have either been admitted or proven. The defendant has made concessions that she has not paid all charges for CAM and real estate taxes. Thus, other than the claims raised in the defendant's special defense that the lease is void and unenforceable and claims for set off (see discussion supra), the parties principally dispute the amount of money owed for the CAM and taxes. The plaintiff claims, among other items, that the defendant is responsible for snow removal and illumination. The defendant has specifically denied those allegations. The plaintiff has submitted a summary of the CAM amounts due and owing for 1996 through July 1, 1999 and the taxes due and owing from 1995 through 1998 totaling $21,896.88. The plaintiff has also submitted its year end statements to the defendant CT Page 8475 setting forth final reconciliations for annual common area maintenance cost for the years 1997, 1998 and 1999. Those statements separately set forth the items that comprise the CAM costs. The reconciliations also highlight items that the plaintiff excluded from the billing per the lease. The costs of the excluded items are deducted from the total CAM costs before a proportionate share is allocated to the defendant. Costs for "Parking Lot Repairs" have not been excluded, nor have costs for "Snow Removal," "Lighting" and "Electricity." It is undisputed that the defendant's proportionate share of allowable costs is 6.9 percent.
The lease provides in paragraph 6(a) that Lessor "will keep and maintain in good repair, at its own cost and expense, . . . the hard surface of the common parking area. . . Paragraph 6(b) provides that Lessor will "remove all snow and ice and debris from the common parking area, and shall maintain the parking area, tree belts, grass areas and surfaces of the parking lot, including the lining of same, sidewalks and approaches and shall illuminate the same; the cost of such removal, maintenance and illumination shall be borne by the lessee on the basis of . . . proportionate share."
The lease is clear that the defendant is obligated to pay her proportionate share of the cost of snow removal and illumination. It is not so clear, however, that she is responsible for parking lot repairs which are specifically designated an obligation of the Lessor "at its own cost and expense" in paragraph 6(a) of the lease. If the cost of parking lot repairs is imposed on the defendant, then the language of paragraph 6(a) would have no purpose or meaning at all. Accordingly, the court finds that the defendant should not be charged with the cost of parking lot repairs for the years 1996, 1997 and 1998, totaling $10,857.64, resulting in a credit to her of $749.18. In all other respects the court finds that the amounts claimed by the plaintiff for unpaid CAM and real estate taxes are supported by the evidence.[3] The total amount owed by the plaintiff for CAM and real estate taxes is $21,147.70.
 III SPECIAL DEFENSE
The defendant alleges in her special defense that the lease agreement between the defendant and the plaintiff is void because the lease to which she and the plaintiff are successors in interest was not signed by the lessor, nor his two witnesses, as required by General Statutes §47-5[4]. In asserting this claim, the defendants rely on General Statutes § 47-19[5], a statute relating only to real property where "the purpose of the statute is to protect creditors and bona fide purchasers from being bound by unrecorded leases of more than one year." CT Page 8476 (Internal quotation marks omitted.) Middletown Commercial AssociatesLtd. Partnership v. Middletown, 42 Conn. App. 426, 435-36, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996), on appeal after remand, 53 Conn. App. 432, 730 A.2d 1201, cert. denied, 250 Conn. 919,738 A.2d 657 (1999). The defendant is not seeking the protection of General Statutes § 47-19 as a creditor or as a bona fide purchaser. Compare with Goodman v. Randall, 44 Conn. 321 (1877).
The defendant argues that the decision of the court, Satter, J., to strike the plaintiff's initial summary process complaint establishes that the lease is void. The court granted the motion to strike on the ground that "[t]he lease attached to complaint is void on its face, not having been executed by the lessor, this action is not between the original lessor and lessee," citing General Statutes § 47-19. Street Retail,Inc. v. Wilson, Judicial District of Hartford, Housing Session, Docket No. HDSP-092347 (August 12, 1997, Satter, J.). The plaintiff argues that when the court, Satter, J., decided the motion to strike, it did not have before it a copy of the assignment of the leasehold interest to the defendant. That document has now been admitted in evidence, as have the prior assignment contracts that resulted in the defendant's assumption of the lease.
In fact, the court, Beach, J., in a second summary process action between these parties decided the case in favor of the defendant on the basis of the language of the lease. See Street Retail, Inc. v. Wilson, Superior Court, judicial district of Hartford, Housing Session, Docket No. HDSP-092347 (March 27, 1998, Beach, J.). "One enjoying rights is estopped from repudiating dependent obligations which he has assumed; parties cannot accept benefits under a contract fairly made and at the same time question its validity." Schwarzschild v. Martin, 191 Conn. 316,321, 464 A.2d 774 (1983); see also Middletown Commercial Associates Ltd.Partnership v. Middletown, supra, 42 Conn. App. 433.
Connecticut's statute of frauds provides that "[n]o civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party . . . to becharged: . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property; (5) upon any agreement that is not to be performed within one year from the making thereof. . . ." (Emphasis added.) General Statutes § 52-550 (a); see Schwarzschildv. Martin, supra, 191 Conn. 321 ("Of paramount importance . . . is the fact that it is the defendant, the party whose signature is found on the arbitration agreement, who is seeking to avoid the arbitration award." (Emphasis in original.)). Because the original lease was signed by the lessee, and because the defendant herself signed an agreement to assume the obligations of the lease, the agreement was signed by the party to be CT Page 8477 charged in accordance with General Statutes § 52-550.
The defendant enjoyed the benefits of the lease and intended to assume the obligations of the lease agreement as drafted. When she assumed the lease, the defendant agreed "to comply with and be bound by all of the terms, covenants and conditions of the Lease and . . . to perform all of the terms covenants and conditions of the lease as if [she] were the original lessee named therein." The defendant also certified in an estoppel certificate that the lease was "in full force and effect." In addition. the defendant admits that, "[p]ursuant to paragraph 4 of the Lease, the tenant was obligated to pay a proportionate share of the real estate taxes levied or assessed against the subject premises."
The defendant has enjoyed the benefits of the lease; she has also, at least in part, performed her duties in accordance with the lease provisions. "One enjoying rights is estopped from repudiating dependent obligations which he has assumed; parties cannot accept benefits under a contract fairly made and at the same time question its validity."Schwarzschild v. Martin, supra, 191 Conn. 321. The defendant cannot prevail on this special defense.
 II COUNTERCLAIMS AND SETOFFS A
The defendant argues, with regard to her first counterclaim, that the plaintiff breached the lease agreement by renting space in the shopping center to Watermark Donut Company for the establishment of a Dunkin Donuts store. The lease provides that the defendant will "use the leased premises solely as a Convenience Food Store for the sale of such products as are normally sold in the business of such type. . . . and shall not engage in any business which shall be in conflict with the provisions of the leases of any other tenants. . . ." The lease provides that, "[s]o long as this restriction or other similar restrictions in other similar commercial leasing situations are not generally held to be in violation of anti-trust laws, so called, be they federal, state or local in nature, then Lessor will not lease to another tenant in the shopping center whose principal business is a convenience food store or grocery store."
"Restrictive covenants, being in derogation of the common-law right to use land for all lawful purposes, are to be narrowly construed and are not to be extended by implication. If their language is of doubtful meaning, it will be construed against, rather than in favor of the CT Page 8478 covenant." (Internal quotation marks omitted.) Neptune Park Assn. v.Steinberg, 138 Conn. 357, 361, 84 A.2d 687 (1951); see Saphir v.Neustadt, 177 Conn. 191, 204, 413 A.2d 843 (1979); 5011 CommunityOrganization v. Harris, 16 Conn. App. 537, 541, 548 A.2d 9 (1988). "[C]ontractual terms are to be given their ordinary meaning. . . ." (Internal quotation marks omitted.) Gino's Pizza of East Hartford, Inc.v. Kaplan, 193 Conn. 135, 138, 475 A.2d 305 (1984). A grocery store is "[a] store selling foodstuffs and household supplies." (Emphasis added.) American Heritage Dictionary of the English Language (New College Ed. 1976). A convenience store is "[a] small retail store that is open long hours and that typically sells staple groceries, snacks, and sometimes gasoline." (Emphasis added.) American Heritage Dictionary of the English Language (3d Ed. 1996). A shop selling donuts and beverages such as coffee does not sell household supplies or staple groceries. The court may not stretch the meaning of the lease provision, but instead must narrowly construe the restrictive covenant. See Neptune Park Assn. v.Steinberg, supra, 138 Conn. 361. A Dunkin Donuts shop is not a convenience food store or a grocery store. The plaintiff did not breach the lease by renting space in the shopping center to the Watermark Donut Company.
 B
The defendant's second counterclaim alleges, "by way of counterclaim, setoff and offset," that the plaintiff owes the defendant attorney's fees for her successful defense against the plaintiff's earlier summary process action. The lease provides that "[i]n any action brought between the parties, the successful party shall be entitled to court costs and attorney's fees." "In Connecticut, a prevailing party may recover attorney's fees if such an award is authorized by either statute or contract." Suarez-Negrete v. Trotta, 47 Conn. App. 517, 522, 705 A.2d 215
(1998); see Gionfriddo v. Avis Rent A Car System, Inc., 192 Conn. 280,297, 472 A.2d 306 (1984). As the prevailing party in two prior summary process actions brought against the defendant by the plaintiff, the defendant is entitled to a set off of her attorney's fees as to those actions. Street Retail, Inc. v. Wilson, Superior Court, judicial district of Hartford, Housing Session, Docket Nos. HDSP-09171 and HDSP-092347. Similarly, in the present action, the prevailing party should recover costs and fees. The defendant is awarded attorney's fees in the amount of $8790; the plaintiff is awarded attorney's fees in the amount $12,081.70 plus allowable costs.
 V CONCLUSION
CT Page 8479
Judgment shall enter in favor of the plaintiff in the amount of $21,147.70 plus attorney's fees in the amount of $12,081.70 plus allowable costs. The defendant is entitled to attorney's fees in the amount of $8790 as a set off from the judgment in favor of the plaintiff. Accordingly, judgment shall enter for the plaintiff in the net amount of $24,439.40, including attorneys fees. Plaintiff to submit a bill of costs.
TANZER, J.